## DOW AKINS AND BILL CARDEN v. STATE.

No. A-2411. Opinion Filed February 19, 1916.

(154 Pac. 1007.)

LARCENY — Theft of Domestic Animals — Felonious Intent — Sufficiency of Evidence. In a prosecution for theft, where the taking was open, without fraud, or stealth, and there was no subsequent attempt to conceal the property, and no denial, but an avowal of the taking, and the testimony for the state, standing alone, raises a presumption of fact in favor of an innocent taking, held, there being no evidence tending to prove a felonious intent, the evidence is insufficient to sustain the conviction.

*Appeal from District Court, Adair County;*
*John H. Pitchford, Judge.*

Dow Akins and Bill Carden, were convicted of larceny of live stock, and appeal. Reversed.

*R. Y. Nance,* for plaintiff in error.

*R. McMillan,* Asst. Atty. Gen., for the State.

DOYLE, P. J. The plaintiffs in error, Akins and Carden, were jointly charged, tried and convicted of stealing two hogs, the personal property of J. L. Brown, and in pursuance of the verdict they were each sentenced to imprisonment in the penitentiary for the term of one year.

From the judgments rendered on the verdict, they appeal.

The only question necessary to be reviewed is the sufficiency of the evidence to sustain the verdict.

A substantial statement of the evidence is as follows:

J. L. Brown testified that he missed two sucking pigs Tuesday night and found them the next Sunday morning at Ed. Adair's; that he stopped at the New Hope church that morning and Ed West told him he thought they were at Ed. Adair's in the chicken yard; that he asked Mr. Ford to go with him; that they carried the pigs to his place and put them down near the sow to see if she would own them, and she did. That Ed. Adair told him they belonged to Dow Akins and Bill Carden.

J. H. Neff testified that he was deputy sheriff and went with J. L. Brown on Sunday morning to the home of Ed. Adair; that Adair's place was about three-quarters of a mile from Brown's place; that they were having Sunday school at the New Hope church that morning, which was about one hundred and fifty yards from Brown's house; that it was about three hundred yards from Brown's house to Quil Leatherwood's.

Hugh Adair testified that both of the defendants had been living with his parents; that the family had no hogs, and that the defendants Dow and Bill brought two small pigs there and told the family that they got them from their uncles, Quil Leatherwood and Will Leatherwood; that while he was attending Sunday school with the defendants on Sunday morning the pigs where taken away.

To the same effect is the testimony of Walter Adair, brother of Hugh Adair.

The defendant Dow Akins testified that on the Tuesday the pigs were said to have been stolen, he and Bill Carden were going by the New Hope church and each picked up a pig and walked on to Ed. Adair's where they were staying; that they got them about midway between Mr. Brown's house and Quil Leatherwood's house; that his uncle Quil had two red sows and a black one and he told him that he was going to take two pigs, and his uncle told him which ones to get; that when he took these pigs he thought they were Leatherwood's pigs; that Brown's pigs were about the same age and they all looked alike; that at Sunday school that

morning he asked his uncle if he had missed the two pigs; that Ed. Adair is his step-father, but he used to live with Quil Leatherwood; that Leatherwood's and the Brown's sows were together when they took the pigs; that fifteen or sixteen pigs belonged to his uncle; that Bill Carden is his first cousin.

The defendant Bill Carden testified that they took the pigs Tuesday afternoon; that there were three sows, two red and one black, and a large number of pigs in the bunch.

Quil Leatherwood testified that the Sunday before the arrest the defendants were at his place and Dow Akins said that they were going to get the pigs and his brother Lee told Dow not to take a certain pig; that he and his brother had been expecting Dow to take the pigs; that he raised one of these boys.

Lee Leatherwood testified that he lived with Quil Leatherwood and one of the boys spoke to them about taking the pigs and he told them not to take a little bob tail one; that their stock were supposed to be Red Durocs and were running out there at the time of the alleged theft; and he had seen Brown's sow and pigs running out there with them.

Dan Hill testified that he was at the New Hope church when the boys were arrested; that he was teacher of the bible class and the defendants were there; that he heard the defendant Akins ask Lee Leatherwood there that morning in a joking way how his pigs were getting along. That after that the deputy sheriff called the defendants out and arrested them.

The charge of the court, consisting of seven instructions, makes no reference as to the law of circumstantial evidence, or as to the law in respect to the possession of property recently stolen.

The sixth instruction is as follows:

"6. You are instructed, that if the hogs in question were the property of Quil Leatherwood or Lee Leatherwood, it would be your duty to acquit the defendant; or if the testimony in the case raises in your minds a reasonable doubt as to whether said hogs were the property of said Quil Leatherwood or Lee Leatherwood, you should resolve the doubt in favor of the defendants and

acquit them.   (To the giving of this instruction the defendants objected.   The objection is by the court overruled, to which the defendant excepts.   John H. Pitchford, Judge.)"

Obviously this instruction was inapplicable.   Brown's ownership of the pigs in question was undisputed and the giving of this instruction was prejudicial to the defendants.   However, we are clearly of the opinion that the evidence is insufficient to sustain a verdict, in that the evidence does not tend to prove a felonious taking.

In cases of theft, the question of the intent with which the accused took the property, is one of fact to be decided by the jury, except where the taking is open and without fraud or stealth, under a claim of ownership, or where, as in this case, the testimony as to the taking standing alone, raises a presumption of fact in favor of an innocent taking, and there being no evidence from which the jury may legitimately infer a felonious intent, such evidence is insufficient to sustain a verdict of guilty.

Two of the four witnesses for the state in this case testified that the defendants stated when they brought the pigs home, that they had taken them from their uncle.   Upon the whole case we are without doubt as to the propriety of reversing the judgments rendered upon the verdict of the jury in this case.

For the reasons stated, the judgments appealed from are reversed and the cause remanded with direction to dismiss the prosecution.

FURMAN and ARMSTRONG, JJ., concur.