## STATE v. JENSON.

No. 4769.  Decided August 27, 1929.  (280 P. 1046.)

*Henderson & Johnson,* of Ogden, for appellant.

*Geo. P. Parker,* Atty. Gen., and *Byron D. Anderson,* Deputy Atty. Gen., for the State.

WOLFE, District Judge.

The defendant was convicted of obtaining three stock certificates representing stock in the Tintic Standard Mining Company from said company by false pretenses, under the first count of an information which reads as follows:

"That the said David Jenson on the 22nd day of January, A. D. 1925, at the County of Salt Lake, State of Utah, wilfully, unlawfully, knowingly, designedly and feloniously, and with intent to cheat and defraud the Tintic Standard Mining Company, a Utah corporation, of its personal property hereinafter described, did falsely and fraudulently pretend and represent to one Cora V. Thompson, who was then and there the agent and employee of the said Tintic Standard Mining Company; that he, the said David Jenson, was then and there authorized by one Eveline E. West to transfer on the books of the said Tintic Standard Mining Company a certificate of stock, No. 370, in the name of the said Eveline E. West, representing 500 shares of said Tintic Standard Mining Company stock, to the said David Jenson as Trustee.

"And the said Cora V. Thompson then and there believing the said false pretense and representation so made, as aforesaid, by the said David Jenson to be true, and then and there being deceived thereby, was then and there induced as such agent and employee aforesaid, to register the transfer, and she did then and there register the transfer of said stock to the said David Jenson, Trustee, by cancelling said certificate No. 370 and issuing in lieu thereof and handing over to the said David Jenson three certificates, No. 11173 for 100 shares, No. A-2350 for 200 shares, and No. A-2351 for 200 shares of the stock of the said Tintic Standard Mining Company in the name of the said David Jenson, Trustee, said stock being of the value of $4650.00 lawful money of the United States of America.

"And the said David Jenson did then and there wilfully, unlawfully, knowingly, designedly and feloniously receive and obtain the said property from the said Cora V. Thompson as agent and employee aforesaid, by means of the false pretense and representation so made as aforesaid, and with the intent then and there to cheat and defraud the said Tintic Standard Mining Company of said property, whereas in truth and in fact the said David Jenson was not, and he well knew that he was not authorized by one Eveline E. West to transfer on the books of the said Tintic Standard Mining Company certificate

No. 370 in the name of the said Eveline E. West, representing 500 shares of said Tintic Standard Mining Company stock, to the said David Jenson as Trustee.

"And the said Cora V. Thompson, as agent and employee aforesaid, would not have parted with said property, nor would she have transferred upon the books of the said Tintic Standard Mining Company stock certificate No. 370 to the said David Jenson, Trustee, except upon the representations so made as aforesaid by the said David Jenson; Contrary to the provisions of the Statute of the State aforesaid, in such cases made and provided, and against the peace and dignity of the State of Utah."

A second count charged in the information charging grand larceny was dismissed on the motion of the state after the evidence was all in but before the case was submitted to the jury.

The first count was drawn under section 8344, Comp. Laws Utah 1917, which reads as follows:

"Every person who knowingly and designedly, by false or fraudulent representations or pretenses, shall obtain from any other person any chose in action, money, goods, wares, chattels, effects, or other valuable thing, with intent to cheat or defraud any person of the same, if the value of the property so obtained does not exceed $50, is punishable as in cases of petit larceny, and when the property so obtained is of the value of more than $50, the person so offending shall be punishable as in cases of grand larceny."

The defendant demurred to the information and assigned as grounds for the demurrer the following:

"1. That the facts stated in the First Count of said Information do not constitute a public offense.

"2. That the facts stated in the Second Count of said Information do not constitute a public offense.

"3. That more than one offense is charged in said Information.

"4. That said information does not concisely conform to requirements of sections 8830 and 8832 of the Compiled Laws of Utah, 1917."

A motion to quash the information was also made on the same grounds. The demurrer and motion were overruled.

We shall first consider the defendant's contention "that the facts stated in the first count of said information do

not constitute a public offense." It is alleged that the defendant obtained the three stock certificates. Certificates representing shares of stock in a corporation are choses in action; consequently the element of section 8344, that defendant obtained choses in action, is sufficiently alleged. The first count of the information also alleged that the property obtained was of the value of more than $50, to wit, of the value of $4,650, so that it is sufficient in that regard to show what degree of crime defendant was charged with. The intent to cheat and defraud the Tintic Standard Mining Company is alleged in the words of the statute which, under ordinary circumstances, is all that can be set out, because intent must generally be proved by inferences. The representation alleged to have been made is that the defendant represented that he had authority from Mrs. West to transfer the stock represented by certificate No. 370, which was issued in the name of Mrs. West and indorsed in blank by her, to himself as trustee. It is further alleged that such representation was false and untrue and further that the defendant knew that it was false and untrue. This constitutes the element of section 8344, requiring the false and fraudulent representations or pretenses to be set out. The count further alleges that the Tintic Standard Mining Company believed said representation that the defendant had authority to transfer the stock to himself as trustee was true, and that it acted upon said representation and did transfer the said stock to the said defendant as trustee, and that it would not have done so had it not been for the representation so made by said defendant. This last combination of allegations sufficiently sets up the obtaining of the chose in action by false representations. The first count, therefore, alleges the representation, its falsity, that it resulted in the obtaining of the chose, and that the representation was made with the intent to cheat and defraud, and that the defendant effected the transaction knowingly and designedly. Every element required to set up a proper charge of obtaining a chose by false pretenses

is contained in the first count. The demurrer was therefore properly overruled.

The information was also demurred to on the ground that the second count did not state a public offense. Since that count was withdrawn from consideration by the jury, no harm could have come from overruling the demurrer on that ground.

It is contended that the demurrer should have been sustained because two public offenses were improperly united in the information in contravention of section 8834, Comp. Laws Utah 1917 which reads as follows:

"The information or indictment must charge but one offense, but the same offense may be set forth in different forms under different counts; and when the offense may be committed by the use of different means, the means may be alleged in the alternative in the same count; provided, that an information or indictment for larceny may contain also a count for obtaining money by false pretenses, a count for embezzlement, and a count for receiving or buying stolen property, knowing it to be stolen; that an information or indictment for forgery may contain a count for uttering a forged instrument, knowing it to be a forgery; that an information or indictment for robbery may contain a count for larceny; that an information or indictment for burglary may contain a count for housebreaking and one for larceny, and an information or indictment for house-breaking may contain a count for larceny; that an information or indictment for rape, or assault with intent to commit rape, or carnal knowledge of a female under eighteen years of age, or attempt to commit the crime of carnal knowledge of a female under eighteen years of age, or crime against nature upon any person, or attempt to commit the crime against nature upon any person may contain also a count for indecent assault."

An examination of the second count shows that it alleges grand larceny by a trick, artifice, or device. It is the old common-law development of larceny, wherein it was held that, where one obtained possession of property by a trick or device, consent to the possession was vitiated because of the fraud, and the possession treated as unlawful from the beginning. The trick, artifice, or

device by means of which carrying away from the possession of the Tintic Standard Mining Company was accomplished is not alleged in the second count in the same language as is used in the count setting up the obtaining of the chose by false pretense, nor are all the elements of the latter included in the allegations setting up the artifice. In fact, it is doubtful whether there are sufficient allegations set up to show the trick or artifice so that perhaps that count, later dismissed, was defective. But, in order to test whether two counts are properly joined in an information, we must not only consider the counts as being adequately pleaded, but we may look to what proof may properly be met which was, given in support of the charge contained in each count. It is quite certain in this case that every bit of evidence which would be required to establish the trick, artifice, or device necessary to prove and actually constituting the larceny could competently be introduced to support the false pretense. In fact it would seem that exactly the same evidence necessary to establish the larceny by artifice would be the evidence required to establish the false pretense for the simple reason that the artifice which constitutes the larceny in this case is the false pretense alleged in the first count. In effect, then, there may be only one offense charged in the information as meant by the statute. It is giving different names to the same offense, charging exactly the same transactions under different legal aspects. Before the amendment of 1905, the California statute read like our section 8834 now reads, except that it did not contain the proviso. In the case of *People* v. *De Coursey,* 61 Cal. 134, which case arose in California before the 1905 amendment, the court held that the charge of larceny and embezzlement could not be united in the same information even though the offenses arise out of the same transaction. The reason given was that the proof for the two acts was not commensurate; the larceny requiring proof of wrongful possession, while the embezzlement started with rightful possession. But there is a substantive difference between a case in which

a transaction performed by the defendant may give birth
to two or more crimes or offenses and a case in which the
transaction can give rise to only one offense although it
may have two legal aspects. The first situation is illustrated
by the case of larceny and embezzlement where the proof
would be different and the offenses established would be
different; likewise in the case where a defendant broke into
a dwelling house with intent to steal and did steal; that is,
when burglary and larceny arise out of the same trans-
action. In such case the proof of the burglary would stop
where the proof of the larceny started.

In *Crook* v. *State,* 59 Ark. 326, 27 S. W. 229, under a stat-
ute substantially like ours, but without the proviso contained
in our statute permitting the joining of certain offenses, it
was held that, where burglary and larceny were com-
mitted in one venture, they could not be joined in one ■
information and indictment. See, also, *State* v. *Mc-*
*Farland,* 49 Iowa 99. In Iowa, where the statute is sub-
stantially like ours except that it is permitted to join com-
pound offenses committed in the same transaction, it is held
that, where the same acts would constitute two offenses,
as where a married man by one act could commit rape and
adultery, they could be joined, but, if different parts of one
venture or transaction, such as a larceny committed follow-
ing burglary, they could not be joined. The court said that
in the former case the crime was compound and in the latter
it was successive. See *State* v. *Ridley & Johnson,* 48 Iowa
370. In *State* v. *Henry,* 59 Iowa 391, 13 N. W. 343, it was
held, following *State* v. *McCormack,* 56 Iowa 585, 9 N. W.
916, that forging and uttering forged paper were two dis-
tinct offenses and could not be joined. Another case is
suggested by Mr. Justice STRAUP in his dissenting opinion
in the case of *State* v. *Anderton* (Utah) 252 P. 280, where
incest, adultery, and rape may all spring out of the same
transaction, say, for instance, in a case where a man
ravished his married niece. In such a case three indepen-

dent public offenses would have been committed. Other illustrations of a transaction giving birth to two or more cognate and distinct offenses could be given. The sum total of the effect of these decisions and illustrations is that, where two or more offenses arise from the same transaction, each punishable as a separate crime, whether all arise from a single act or from successive parts of a whole transaction, they cannot be joined unless permitted by an exception to the prohibition against uniting the offenses or unless they bear the relation of a lesser involved to a greater offense or the component parts of the crime sought to be charged are themselves crimes. But the instant case furnishes a situation where apparently the whole transaction gives rise to just one offense; the offense having the legal aspect of larceny by artifice and also the aspect of obtaining money by false pretenses. It would appear that, where a single and whole transaction was in one count charged in the aspect of larceny and in another count charged in the aspect of obtaining goods by false pretenses, only one offense or violation was really charged in the information, when exactly the same evidence to prove the trick, artifice, or device by means of which the larceny was committed would be the evidence necessarily introduced to prove the count of obtaining goods by false pretenses. Section 8834 was hardly designed to prevent the information from calling a single offense in one count larceny, and in another count false pretense where the situation was such that exactly the whole of a transaction constituted the larceny by artifice and at the same time constituted the obtaining of goods by false pretenses. The two counts in this case are mutually exclusive; that is to say, a verdict of guilty in one would perclude a verdict of guilty in the other, because only one offense was committed, and the punishment whether that offense was called larceny by artifice or false pretenses is the same. And, if the second count had not been withdrawn from consideration by the jury, the court should have so charged.

In *State* v. *Bailey,* 50 Ohio St. 636, 36 N. E. 233, 235, the indictment contained one count charging embezzlement of the goods and another charging the embezzlement of the money produced by their sale. The court held that the trial judge abused his discretion when be compelled the prosecutor to elect as to which count the state should stand on. The court said:

"The law permits this multiplication of the counts in an indictment, where each states, though with variations of detail, the same offense, to prevent that failure of justice which might follow if the prosecution should be confined to a single count, and the proof should vary from the allegations of that count in some essential particular.

"Upon the same principle, it would seem that where two similar and closely allied offenses arise from the same transaction, and each must be established, if at all, by substantially the same evidence, each should be permitted to be set forth, in separate counts, in the same indictment."

While in the state of Ohio there is no statute prohibiting the joining of charges in the same information, the matter being left to the discretion of the court to be exercised under considerations of doing justice to the state and to the defendant, yet we cite the language of this case because it expresses so aptly the reason for holding that the same offense should be chargeable in one information under two counts, not only in a case where it states the offense under separate forms or committed by various means, but where it states the same offense under two different legal names or under different aspects depending upon the complexion which the transaction will show upon the conclusion of the proof. So in this peculiar and rare situation, where the same allegations must be set up and the same proof introduced to allege and prove the artifice constituting the larceny by trick or device as must be set up and proved properly to allege and establish the obtaining of goods by false pretenses, it is doubtful whether more than one offense as meant by the statute has been charged in the information.

But whether the information in this case set forth the

same offense in different forms under different counts calling them different names, or whether it set up two offenses, can make no difference, because the defendant was in no case prejudiced. The second count was withdrawn from the consideration of the jury after the evidence was all in. Had the evidence necessary to support the second count been different from that necessary to support the first count, the situation might have been different. It could not then have been said that the defendant might not have been prejudiced when evidence was introduced to support a count later withdrawn which evidence or a part of it at least, would not be legally competent to support the count which remained; but in this case the evidence to support each count was the same, or at least it can be said that none of the evidence introduced to support the second count was not legally competent to support the first count. Consequently, the withdrawing of the larceny charge from the consideration of the jury after the evidence was in and before submission, left the case the same as if the false pretenses charge was the only one ever set out in the information. No prejudice to the defendant could have arisen even had the two counts been submitted to the jury, since all of the evidence would have been legally competent under either charge. A fortiori no prejudice can arise where the larceny charge was withdrawn from the consideration of the jury. We therefore hold, under sections 9231 and 9365, Comp. Laws Utah 1917, that, if any error was committed in overruling the demurrer on account of the improper uniting of the two counts in the information, such error in this case was not prejudicial to the defendant.

There is nothing in the contention that the information does not conform to the requirements of sections 8830 and 8832, Comp. Laws Utah 1917.

We now pass to the consideration of the third contention contained in the defendant's brief, to wit: (a) That there is no evidence that any false representation was made by the defendant; (b) that there is no evidence that the Tintic

Standard Mining Company parted with any property because of any representation made by the defendant; and (c) that, when the defendant wrote in the word "trustee" after his name, it was (1) simply for the purpose of having recorded on the books of the company and on the new certificates the capacity in which he held the stock, and (2) that the word "trustee" apprised the Tintic Standard Mining Company that defendant did not claim to be the owner of the stock and therefore that he made no representation, implied or otherwise, that he was the owner. The error involved in contention (a), above set out, reveals itself when we fasten on the exact representaion it is charged the defendant made. The representation is not that the defendant is the owner of the stock but that he was authorized by Mrs. West to have the stock transferred. True, that representation was not expressly made orally or in writing, it was implied in the presentation of the indorsed certificate with the words "David Jenson, Trustee," inserted in the assignment and power of attorney contained on the back of the certificate together with the request made by defendant's letter of January 22, 1925 (Exhibit C) instructing the Tintic Standard Mining Company to transfer certificate No. 370 to him as trustee in the form of three other certificates. Such representation of authority to transfer is implied in every presentation of an indorsed certificate for transfer. Could it be said by one who presented an indorsed check to the teller's window for payment where no words passed between the presentor and the teller, that the presentor did not impliedly represent that he had authority to present the check for cash either as agent or as owner? If a person found or stole an indorsed check or if he indorsed the payee's name on the back of an unindorsed check and presented the same for payment without colloquy, could he be heard to say that he had not represented by implication that he had authority to cash it? Or that he had not represented that the indorsement was that of the person whose indorsement it purported to be? Or that it was placed there

at least by such person's authority? It is charged in the first count that the defendant "did falsely and fraudulently pretend and represent * * * that he * * * was then and there authorized by one Eveline E. West to transfer on the books of the Tintic Standard Mining Company a certain stock certificate No. 370," etc. When it is seen that it was the implied and not any verbal or express representation which misled the company, we do not have any difficulty with the testimony of Cora Thompson. She testified that her duties as transfer clerk and what she did as such clerk was to satisfy herself that the name of the person which was indorsed on the back of the certificate was the same as the name on the front of the certificate, and to compare the signature of the indorsement with the signature on the signature card on file in the office, and that, if she was satisfied that the signature was genuine, she immediately made the transfer to any person who might present that certificate or to any person that such presentor asked that the new certificate be issued to, and that she really did not rely on the letter of Jenson except to ascertain the data necessary to issue the new certificate, and that the letter was no inducement to make the transfer. Miss Thompson did not say and could not correctlly have said that she did not rely, when a certificate was presented to her for transfer, on the implied representation that the presentor had the authority to make the transfer either as agent or owner. The very fact that such representation is so inherently a part of every presentation for transfer that reliance is placed upon it as a matter of fact. The very custom Miss Thompson testified to as being that of the Tintic Standard Mining Company in transferring certificates shows that reliance must have been placed on that implied representation because no inquiry was made on the very belief that no one would present a certificate for transfer unless they had authority to do so. It must be presumed that no company would transfer a certificate if they knew that the person who presented it for transfer had no authority to transfer

it, or, putting it in another way, if they did not believe that the person presenting the certificate had authority to transfer it, they would not make the transfer. The reliance on that representation is so profund that usually it is not even questioned. That is the true import to be gotten from the testimony of Miss Thompson. The transfer clerk simply did not conceive that a presentor of a certificate would present it if he did not have authority to transfer it—the reliance was so implicit that he had such authority. Moreover, the law of this state, later declared in *West* v. *Tintic Standard M. Co.* (Utah) 263 P. 490, 493, 56 A. L. R. 1190, but, in theory, always existing in this state, was to the effect that a company asked to transfer stock to a person with notice that he held only a qualified title must ascertain at its peril whether he has the authority to make the transfer. Logically it must be held that a company relied on the implied representation that the person who presented the certificate had such authority, or otherwise the company would be subjecting itself to a liability if it transferred without concern or regard to the fact of the authority of the presentor. That disposes of the contention that no false representation was made and that the false representation was not relied on.

The next contention (c-1 above) is that the defendant did not make any false representation because the implied representation that he had authority to transfer the certificate was true, for the reason that he really was a trustee of the stock and was simply causing the indicia of the stock he held in trust to be recorded so as to reflect the capacity in which he held it. This contention falls because the evidence is otherwise. Laying aside the assumption, unnecessary herein to be determined, that it is within the implied authority of a trustee of stock for delivery only (the purpose of the bailment in this case was for safe-keeping and delivery back to Mrs. West) to have the stock certificate transferred to his name as trustee, without express direction of the trustor, we find that the

testimony shows that the defendant is merely a bailee. Mrs. West testified as follows:

"I took over some papers for him to keep. I had so much confidence in him and I was making my trip hurriedly, and just having this piece of property sold and mortgaged I went to him and asked if he would please keep that until I returned. He was to take care of those papers that I gave him. There was a list of the property made out. I took those papers in a pasteboard box in which I had kept them for years. It was about the size of a shoe-box. I had my real estate papers, the Tintic Standard stock and some other pieces of paper—some mining stocks. I had in the box other certificates of stock beside the Tintic Standard stock.

"* * * Q. And before you went down there you took some papers, some stocks, up to Mr. Jenson's office? A. I did; yes.

"Q. And among them was this certificate of stock of the Tintic Standard Mining Company? A. Yes.

"Q. And there were some other stocks, were there not? A. Yes.

"Q. And you left them with him at that time for safe keeping, did you? A. I did.

"Q. You left them in trust with him, or you left them in trust with him for your benefit, is that right? A. The word 'in trust' was never mentioned. I said to him 'Please take care of it until I return.'

"Q. Yes; and if you didn't return, or if anything should happen to you, if you should die, did you give him any other instructions what to do? A. No, sir, I did not. It may seem foolish but I didn't; I didn't; I just said, 'Please take care of this until my return.' I never dreamed of dying."

The defendant being a mere bailee had no authority to transfer the certificate. He knew he had no such authority, but impliedly represented that he had the authority, and the company relied on the implied representation and transferred the certificate.

The contention that the company was apprised by the word "trustee" of the defendant's purported capacity (c-2 above) is true, but the fact that the company knew that Jenson represented that he had only the legal and not the equitable title cannot purge the effect of his implied repre-

sentation that he had authority to transfer the certificate. The chose was obtained by the reliance on the latter and not on the former representation. Where a person has no authority to transfer a certificate, his informing the company that he only held it in the capacity of trustee does not make the company's act of transference any the less an act done in pursuance and reliance on the implied authority that he had the right to transfer it to himself as trustee. In the last analysis the defendant obtained the chose, not by the false representation that he had the authority to transfer it to himself as trustee, but by the false representation that he had the authority to transfer it at all.

That the defendant intended to cheat and defraud the Tintic Standard Mining Company when he secured the transfer in his name as trustee was proved in the minds of the jury from the fact that he did actually cheat and defraud them by later conveying the stock to other persons than Mrs. West and pocketing the receipts from the sale.

What has been said disposes of the main contentions of the defendant. Defendant complains of the court's instruction No. 4½. That instruction is not complete, it should have stated not only that the law does not require that a false representation should be the sole inducing cause of the acts of the defrauded person, but it should have stated in addition that the jury must be satisfied that the defrauded person would not have parted with the property but for the false representation. But the record shows that this principle was sufficiently stated in instruction No. 4 so that the jury must have understood and taken it into consideration in connection with instruction No. 4½; moreover the defendant does not attack the instruction on that ground but on the ground that the defendant made no fraudulent representation to the company. We have already covered that subject.

Defendant complains of the court's instruction No. 5, where the court instructed the jury as matter of law that the defendant's filling in the words "David Jenson, Trustee,"

on the back of the certificate was wrongful. The evidence supports the instruction. The evidence is undisputed that the defendant was a bailee only, and had no authority to fill in the words. We have sufficiently considered the evidence in that regard earlier in this opinion.

Defendant complains of instruction No. 6. The instruction we think states the law correctly in this state. This court said, in *West* v. *Tintic Standard M. Co.,* supra, that "it is contended that the endorsement on Certificate No. 370 appearing to transfer it to 'David Jenson, Trustee,' did not * * * put the defendant [Tintic Standard Mining Company] on inquiry * * * that Jenson had not the right or authority to transfer the certificates * * *" That contention was repudiated in the opinion, and it was held that it was the duty of the company to make the inquiry. While the liability of the Tintic Standard Mining Company was held in that decision to arise from the whole of the actions of the Tintic Standard Mining Company in relation to the stock owned by Mrs. West (that is, the first transfer of her stock to Jenson as trustee as well as the second transfer of that trustee stock to others who presented the certificates), it is a reasonable inference from the language and holding of that decision that the liabiltiy would arise alone from the failure to fulfill the duty to inquire as to Jenson's right or authority to transfer the stock.

What we have said covers all the assignments of error discussed in the briefs and in the argument.

The judgment of the district court is affirmed.

CHERRY, C. J., and STRAUP, ELIAS HANSEN, and FOLLAND, JJ., concur.

EPHRAIM HANSON, J., being disqualified, did not participate herein.