## STATE v. TIMMERMAN.

No. 5591.   Decided March 31, 1936.   (55 P. [2d] 1320.)

*E. A. Rogers,* of Salt Lake City, for appellant.

*Joseph Chez,* Atty. Gen., and *Zelph S. Calder,* Deputy Atty. Gen., for the State.

MOFFAT, Justice.

The information in this cause was filed in the district court of the state of Utah, Third judicial district, in and for Salt Lake county, on the 1st day of February, 1934. The cause was argued and submitted to the Supreme Court for decision on the 13th day of January, 1936. The case is therefore to be ruled by the provisions of R. S. Utah 1933, and not by the amended Code of Criminal Procedure which became effective on May 14, 1935. Laws Utah 1935 (chapter 116 et seq.). The information accuses the defendant, William P. Timmerman, of the crime of obtaining money under

false pretenses; the charging part of the information being as follows:

"That the said William P. Timmerman, on the 17th day of January, A. D. 1933, at the County of Salt Lake, State of Utah, wilfully, unlawfully, knowingly, designedly, feloniously, and with intent to cheat and defraud the Ostler Candy Company, a corporation, did falsely and fraudulently pretend and represent to Harry Ostler, the president of said corporation, that the sum of One Hundred and no/100 ($100.00) Dollars was then and there due and owing to him, the said William P. Timmerman, by the said corporation; and the said Harry Ostler, then and there believing the said false pretense and representation so made, as aforesaid, by the said William P. Timmerman to be true, and then and there being deceived thereby, was then and there induced as such president of said corporation, to sign, execute, and deliver to the said William P. Timmerman, one check of the value of One Hundred and no/100 ($100.00) Dollars lawful money of the United States of America, payable to the said William P. Timmerman and drawn on the Utah Savings and Trust Company, a banking corporation of the State of Utah, with its principal place of business at Salt Lake County, State of Utah; and the said William P. Timmerman did then and there wilfully, unlawfully, knowingly, feloniously, and designedly receive and obtain the said One Hundred and no/100 ($100.00) Dollar check from the said Ostler Candy Company by means of the false pretense and representation so made as aforesaid, and with intent then and there to cheat and defraud the said Ostler Candy Company, whereas, in truth and in fact the said William P. Timmerman well knew that the said Ostler Candy Company was not indebted to him in the sum of One Hundred and no/100 ($100.00) Dollars, or in any other sum; and the said Harry Ostler, as president of the said Ostler Candy Company as aforesaid, would not have signed, executed, and delivered to the said William P. Timmerman said check in the sum of One Hundred an no/100 ($100.00) Dollars, except upon the false representation so made as aforesaid by the said William P. Timmerman."

Seventy-three numbered errors are contained in the assignments of error. Four of them relate to given or refused instructions. None of these four assignments are argued, and are therefore deemed abandoned. Two of the assignments refer to alleged misconduct of the prosecuting attorney. These are treated with the question of admission or exclusion of evidence. One relates to the denial of a motion

for a new trial; two of them to the insufficiency of the information to state a public offense and insufficiency of evidence to make a case. All the other assignments of error relate to alleged errors in admission or exclusion of evidence over objection, and that defendant's right of cross-examination was "unduly and unreasonably restricted." The record contains over five hundred typewritten pages and covers everything from loans and lettuce farming, debits and credits, bookkeeping, and cash, to dance halls, promissory notes, and overdrafts.

Without pretending to be meticulously accurate, the record in substance shows that the defendant, William P. Timmerman, had been an employee of the Ostler Candy Company for a period of about nine years; that defendant had been and at the time of the alleged offense was bookkeeper and cashier of the company, of which Harry Ostler was president and general manager; that there had been borrowings and loans, personal and corporate, between the company and its manager and defendant; that at the time of the alleged signing of the check there was no spoken word, no writing or memorandum signed by the defendant, no misrepresentations or pretenses other than those that may arise by implication out of the circumstances, that induced the general manager of the company to sign, execute, and deliver a check of the Ostler Candy Company of the value of $100 to the defendant.

The circumstances relating to the transaction are about as follows: On January 17, 1933, Harry Ostler signed a check that had been placed upon his desk along with some other checks, by some one not definitely known, but according to custom it was probably done by the defendant William P. Timmerman, for $100 payable to the order of William P. Timmerman. The check was drawn on the Utah Savings & Trust Company against the Ostler Candy Company account. William P. Timmerman received the check, indorsed it, and deposited the same to his own credit with the Utah Savings & Trust Company. It was the duty of defendant to

make out the checks of the company in payment of company accounts and put them on the desk of the president of the company for signature. That was what was probably done with reference to the check in question. The president had no independent recollection of signing the particular check. The defendant admitted receiving the check and depositing it to his own credit. It is not known definitely whether the defendant prepared the check and placed it upon the desk of the president of the company, or whether an assistant bookkeeper did it. It is probably that it was done either by the defendant or by his direction, because such would likely happen in the usual course of business. That all the balance of the record is devoted to the question of whether or not, at the time, there was a debtor and creditor relationship existing between the company and defendant favorable to defendant. The defendant maintains there was; the state maintains there was not; and thus the battle rages about the accounts and audits of the candy company and the borrowings and loans of the company and its officers.

If it be granted that the jury from the evidence might have found against the defendant's contention on that issue, still, is there sufficient evidence to support the verdict of the jury? During the long period of the defendant's employment, many times had he placed checks upon the desk of the president of the company for signature, not only for payment to himself of salary and for loans, but also checks for general payment of all accounts payable of the company. The claim that the particular check was obtained by false and fraudulent representations did not arise until about a year after the check was signed and after an audit of the company books had been made. May it be said, when it is clear there was no verbal or express representation entering into the incident, that under the circumstances there was an implied representation that there was an existing indebtedness at the time due and owing to defendant from the company and that such implied representation misled the president of the company into the signing of the

check, and that he would not have done so without believing the implied misrepresentation, and that the president did believe and rely upon the implied misrepresentation, and that he would not have signed the check except upon the belief based upon the implied false and fraudulent representation? *State* v. *Jenson,* 74 Utah 527, 280 P. 1046. May it be said that the manager and president of a corporation was impliedly misled as to the status of the debtor and creditor relationship existing as between the company and the defendant by the placing upon his desk of a check for his signature? That a false pretense and misrepresentation may be implied from acts has been decided in *State* v. *Jenson,* supra. That the defendant had authority to prepare and present checks to the president of the company for his signature is shown to be part of the defendant's duties and for which he was paid. If it were shown that the defendant presented the check for signature, and if such presentation impliedly carried with it the representation that there was an indebtedness due and owing to the defendant when he knew that such was not the fact, a serious situation would be presented. However, if it were shown that the defendant in good faith believed or had good reason to believe, and acted upon the belief, that there was such an amount due him, or that the president and manager was in as good or better position to know concerning that relationship than was the defendant, then could the submission of such check for signature be an implied false and fraudulent representation as to such debtor and creditor relationship? If it were also shown that the defendant at that time did believe, still believes, and stoutly maintains, that there is and was due and owing to him considerable money, could it be said the defendant's action constituted criminal fraud, or false representation, in submitting the check with others in the ordinary course of business?

The testimony shows that neither the making of the check by defendant, nor presentation or signing of the check by the president of the company, was remembered at the time

of the trial. It is assumed that it was done because in the ordinary course of business it would be done. No positive mental state is revealed as to either party other than the implied intention to do what was subsequently found to have been done. To find the defendant guilty requires a resort to speculation.

"Upon a trial for having obtained, with an intent to cheat or defraud another designedly by any false pretense, the signature of any person to a written instrument * * * the defendant shall not be convicted * * * unless the pretense * * * is proved by the testimony of two witnesses, or that of one witness and corroborating circumstances." R. S. Utah 1933, 105-32-17.

It will be seen that under the statute the following elements and proof of them must concur, viz.: (1) There must have been false or fraudulent representations or pretenses. (2) The representations must have been made knowingly and designedly. (3) There must have been a concurring intent to cheat or defraud the person to whom the false or fraudulent representations or pretenses were made. (4) Something of value must have been obtained because of the false or fraudulent representations or pretenses. And (5) the party to whom the false or fraudulent representations or pretenses were made must have parted with something of value in reliance upon the false or fraudulent representations or pretenses, believing them to be true. R. S. 1933, 103-18-8.

Measured by the requirements of the statute, we are of the opinion the evidence submitted does not meet them. The motion of defendant that the jury be instructed that the state had not proved its case should have been granted.

The case might well rest here. Appellant, however, argued that the information does not state facts sufficient to constitute a public offense. We undertake to dispose of this question, as the same question may arise upon a new trial. The argument is based upon the contention ■ that, in order to state the offense of obtaining money

under false pretenses, the information must affirmatively and specifically allege the ownership of the property, unless there is some legal excuse stated in the indictment or information for omitting the allegation. There is a division of authority upon that question. We need cite only an illustrative case on each side of the controverted question. New Jersey holds squarely in the case of *State* v. *Samaha,* 92 N. J. Law, 125, 104 A. 305, 306, that: " 'Actual ownership' of the money or goods by the person upon whom the cheat is practiced is not essential. It is sufficient if he had lawful possession and dominion of the same." New Mexico and some other jurisdictions hold that an indictment or information for obtaining money by false pretenses is fatally defective unless the ownership of the property is directly and distinctly alleged. *State* v. *Faggard,* 25 N. M. 76, 177 P. 748. In the absence of statute the weight of authority, numerically, is with the rule announced by the case last above cited.

In a number of jurisdictions it is held that it is sufficient if it appears from the indictment or information to whom the property belonged. In the case of *People* v. *Skidmore,* 123 Cal. 267, 55 P. 984, the situation was presented of one fraudulently obtaining a signature to a promissory note. It was there held that the facts showed the ownership of the note as fully as though there was a direct allegation in the pleading to that effect. In the instant case it is made to appear from the allegations of the information, although not directly alleged, who the owner of the check was. It is made to appear that the check was the property of the Ostler Candy Company with such certainty that no other implication could possibly arise. We think the information sufficiently alleges ownership, and being attacked on no other ground, the trial court did not err in admitting evidence over objection that the information did not state facts sufficient to constitute the offense charged.

In view of the conclusion reached, it is not necessary to discuss the error assigned upon denial of a motion for a new

trial. Upon a new trial the claimed newly discovered evidence may be presented.

All of the other errors related to the admission or exclusion of evidence. We are of the opinion the trial court held too rigidly to certain company books of account and too narrowly limited defendant on cross-examination, particularly as to transactions which defendant attempted to show not recorded in the company books between defendant and the company and its officers. These had a bearing, not only on the question of indebtedness, but went to the matter of intention also an important element in this type of cases. There being no proof of an express, oral, or written representation of an indebtedness existing between defendant and the Ostler Candy Company, and the only proof of such representations resting in the circumstances and what may be implied from the placing of the check upon the desk of the president and general manager in the usual course of business, as shown, and if such implication could so arise, it was necessary, and the burden of proof was upon the state, to show beyond a reasonable doubt that there was no such indebtedness. To do this the state was compelled to go into the field of business relations of the parties. When that field was gone into by the state, the defendant was then entitled to go into any relationship on cross-examination or defense that would tend to show either that there was a relationship of creditor and debtor or other matter that would tend to destroy an implication of fraud or misrepresentation or false pretense arising out of the business transactions between the defendant and the company or its officers personally, if it tended to reveal intent. We think, without referring to specific instances or multiplying illustrations, that the trial court too narrowly limited the defendant, to his prejudice, in the matters referred to.

The judgment of the lower court is reversed, and the cause remanded for a new trial.

ELIAS HANSEN, C. J., and FOLLAND, EPHRAIM HANSON, concur.

WOLFE, Justice (concurring). (56 P. [2d] 1354.)

The information charges that defendant "did falsely and fraudulently pretend and represent * * * that the sum of One Hundred Dollars was then and there due him." The only evidence of a false representation of indebtedness is that which may be implied from laying the check for $100 made out in favor of defendant, with other checks, on the desk of the president of the Ostler Candy Company for his signature. Granted that such action was an implied representation that the relationship of debtor and creditor existed, there can be no additional implication from such action of defendant's state of mind when he did it, to wit, that he knew there was no debt due him and therefore that he knowingly falsely represented. His action is just as consistent with a belief that there was an indebtedness owing him as it is consistent with a knowledge that there was no indebtedness owing him. In other words, the act of laying the check before the president for signature gives no clue one way or the other as to the belief which was in defendant's mind. There is no implication of guilty knowledge contained in the act; no inference can be derived from it. Since this is the only attempt to prove that defendant knew his representation, if any such can be implied, was knowingly false, and the attempt fails, the case must fail because of lack of evidence to support at least one necessary element of the information. I hardly think the opinion of the court intends to imply that it was necessary to show "that defendant in good faith believed there was such amount due him" or that it was necessary for him to show "that the defendant at that time did believe * * * that there * * * was due and owing to him considerable money." It would be necessary for the state to prove that he did not so believe, and, having failed in that, their case would fail. It would not be neces-

sary for the defendant to show his good faith until some proof was introduced tending to show his guilty knowledge. I opine that the court's opinion merely intends to state that the defendant was not only shown to have a guilty mind, but that the evidence was actually to the effect that he in good faith believed the Ostler Candy Company indebted to him.

I also concur in the holding that an information which sets out that "Harry Ostler was * * * induced as president of the said corporation [Ostler Candy Company] to sign, execute and deliver * * * one check," sufficiently, by necessary implication, alleges that such check was the corporation's check. Where one is induced as an officer of a corporation to sign a check, it can be nothing short of an allegation that the check he signed was a corporation check, for he could only sign a corporation's check as an officer of the corporation. The defendant was just as much apprised and the information just as definite for the purposes of identifying this charged offense in the matter of safeguarding against double jeopardy as if it had expressly stated the check to be "one of the Ostler Candy Company."