279 P.2d 711

**STATE of Utah, Respondent,**

v.

**C. Jean SHONKA, Appellant.**

No. 8205.

Supreme Court of Utah.

Feb. 3, 1955.

Arthur Woolley, Ogden, Omer J. Call, Brigham, for appellant.

E. R. Callister, Atty. Gen., Walter L. Budge, Asst. Atty. Gen., for respondent.

CROCKETT, Justice.

Miss C. Jean Shonka was convicted of grand larceny from which she appeals.

The factual basis for the conviction relates to circumstances under which the defendant, an employee and former treasurer of the Box Elder County High School, cashed a check for $300.55 payable to the school. She was first employed in 1945 as secretary to the principal, Alf L. Freeman. In succeeding years she was given the title of treasurer and additional duties including the handling of the funds of the school, keeping books, making bank deposits and joining with the principal as co-signer of checks.

Late in 1951 an audit of the school accounts showed a substantial discrepancy between money received and bank deposits. The evidence tended to show that the accounts of the school were loosely kept and the bookkeeping system was inadequate so that it was difficult to fix responsibility for the shortage. However, in January 1952, following the audit, Miss Shonka was relieved of the responsibility of receipting for and depositing school funds. Her authority over such money was restricted to the use of the "petty cash" fund in the amount of $25 used in making change at registration and other miscellaneous purposes. She was also instructed not to open any mail addressed to the Principal. A new system of bookkeeping was installed, and a teacher named Austin Larson was appointed to act as treasurer, to sign receipts for the various funds coming into the school and to make deposits.

It was discovered that notwithstanding the restrictions upon her authority to handle funds, Miss Shonka several months later cashed a check payable to the high school in the sum of $300.55 which was not deposited to the credit of the school, nor was any record of the item made in the school accounts. Her story concerning the transaction in question was that on August 21, 1952, since

Mr. Freeman, the Principal, and Mr. Larson, the newly appointed treasurer, were away, she went to the vault where cash was frequently held in order to get change which would be needed for purposes of registration to take place the following week, but found only this check, which was dated March 28, 1952, drawn by the Utah High School Activities Association to the order of Box Elder High School. She took the check to the First Security Bank, Brigham City, endorsed it: "Box Elder High School, by C. Jean Shonka, Treas." and received the money from the bank teller. She further states that she placed the money in a bag, took it back to the school and placed it in the vault from which she had taken the check; that during the registration process she removed $50 in change from the money bag to provide change for the five teachers in charge of registering the students; and that after registration was completed on August 28, she returned the change to the money bag in the vault.

Miss Shonka testified that she was aware that Mr. Larson was responsible for the deposit of such money and that he was supposed to receipt for it; that she knew she had not made an entry of it upon the school books and that they would thus fail to balance; that she had neglected to mention to any school official that she had cashed the check; and that she had failed to make any notation or record of the item in the personal books which she kept. None of the five teachers who allegedly received change from Miss Shonka for registration purposes could recall having done so, and Miss Shonka declined a request and later an ultimatum to permit an audit of her personal records, a result of which she resigned her position December 23, 1952. Upon being questioned at the trial as to her failure to comply with this request, she stated that the ultimatum was either to permit the audit or to resign and that she had complied by resigning.

The principal issues confronting us are (1) was there sufficient evidence to sustain a conviction of larceny? and (2) did the court erroneously give an instruction relating to lost property?

 With respect to the first question, the scope of review was properly outlined in State v. Peterson:[1] "if the evidence favorable to the state, with all reasonable inferences and intendments that can be drawn therefrom, could sustain a verdict of guilty the cause should be submitted to the jury." That is, the evidence must be such that reasonable minds could believe beyond a reasonable doubt that each of the following elements of larceny existed: (1) taking and (2) carrying away of the (3) personal property (valued over $50.00) (4) of an-

1. 110 Utah 413, 174 P.2d 843, 845. See also State v. Brooks, 101 Utah 584, 126 P.2d 1044; State v. Barretta, 47 Utah 479, 155 P. 343; State v. Potello, 40 Utah 56, 119 P. 1023; State v. Bruno, 97 Utah 33, 92 P.2d 1103.

other (5) by trespass without the owner's consent (6) with the intent to steal.[2]

It is with respect to the intent to steal that the defense argues the evidence is insufficient. She correctly insists that it must exist at the time of the taking.[3] Both the check representing value, and the cash derived therefrom, are personal property and the subject of larceny. The evidence with respect to the intent to steal is similar, whether the time of taking refers to the taking of the check from the vault or the taking of the money from the bank.

The defendant places reliance upon the fact that her own story as to the purpose of taking the money is the only direct evidence as to intent, and seeks refuge in the language of the Supreme Court of Oklahoma in the case of Akins v. State:[4] "In cases of theft the question of the intent with which the accused took the property is one of fact to be decided by the jury, except where the taking is open and without fraud or stealth, under a claim of ownership, or where * * * the testimony as to the taking, standing alone, raises a presumption of fact in favor of an innocent taking, * * *."

Protection in the first exception above specified is sought by defense counsel, who emphasizes that Miss Shonka went to the bank and procured the money "in open daylight" and "without stealth or fraud." This prompts one to inquire, how else could she have procured the money? Moreover, there was no claim of ownership by her, since the check was signed "Box Elder High School—by C. Jean Shonka, Treas."

It is also urged that her story as to her purpose in taking the money "raises a presumption of fact in favor of an innocent taking. * * *" It is true as the defense argues that there is no direct evidence of an expression of intent to steal. The exigencies of proving criminal intent are such that it is most often established by conduct and circumstances rather than expressions of intent.[5] What the defense argument overlooks is that the jury was not absolutely bound to believe all of the testimony of the defendant.[6] It was their prerogative to give it only such weight as they thought it entitled to considered in the light of all of the facts and circumstances surrounding the occurrence,[7] including the self-interest of the witness. It was irrefutable that Miss Shonka took the check to the bank, signed it and

2. 2 Burdick, Law of Crime, p. 263 (1946).

3. People v. Miller, 4 Utah 410, 11 P. 514; State v. Allen, 56 Utah 37, 189 P. 84.

4. 12 Okl.Cr. 269, 154 P. 1007, 1008.

5. Loper v. U. S., 10 Cir., 160 F.2d 293. See 2 Burdick, Law of Crime, p. 306 (1946).

6. State v. Hitesman, 58 Utah 262, 198 P. 769 (Grand Larceny).

7. See Jones v. California Packing Corp., Utah, 244 P.2d 640, 644 for a collection of cases and authorities.

received the money; the jury could believe her testimony in accord with this. But her story as to her intent, and that she took the money back and placed it in the vault, which was in her self-interest in the highest degree because it was simply a denial of the commission of the crime, they could reject. Self-interest or improbability can always be used to discredit or discount the value of the testimony of a witness,[8] and substantive direct evidence, though uncontradicted, may be disbelieved by a jury "where the witness is a party or otherwise interested".[9]

The fact that the defendant admitted taking the money, coupled with the further facts that she made no record of it, failed to report it to. any of the school officials, that no one ever discovered or knew of the bag containing money being placed in the vault, that the teachers did not recall receiving change from Miss Shonka, and that she refused to permit an audit of her personal accounts, considered together constituted a sufficient factual foundation from which reasonable minds could infer that she took the money with the intent to steal it.

■ Defendant also charges that the court erroneously suggested to the jury that the property was "lost," by improperly instructing them concerning the larceny of lost property. Miss Shonka's own testimony was that she "found" the check in a drawer in the vault where it had apparently been unnoticed and uncashed, for several months. The jury were instructed that "Every person who finds lost property under circumstances which give him knowledge of a means of inquiry as to the true owner, and who appropriates such property to his own use * * *, without first making reasonable and just efforts to find the owner and restore the property to him, is guilty of larceny", which is in conformity with our statute.[10]

If the jury believed that the property was lost and subsequently "found" by Miss Shonka, the conviction could properly rest upon that instruction. If they did not believe the property to be lost they were told to disregard the instruction. This instruction was accurate as to the law, and applicable to one theory of the evidence which the jury reasonably could have followed.

■■ Defendant also maintains that the jury verdict finding the defendant guilty of larceny, including a finding of "not guilty of the crime of embezzlement," amounts to an affirmative finding that she did not have a felonious intent to steal the money. This contention does not appeal to or convince us. The court submitted alternate forms of verdict, one finding the defendant guilty of the crime of embezzlement, and not guilty of the crime of larceny, and another finding the defendant guilty of the crime of larceny, but not guilty of the crime of embezzlement. The jury simply returned the verdict finding

---

8. Los Angeles & Salt Lake Railroad Co. v. Public Service Commission of Utah, Utah, 253 P.2d 355, 356.

9. 32 C.J.S., Evidence, § 1038, p. 1095.

10. Sec. 76-38-2, Utah Code Anno.1953.

the defendant guilty of grand larceny, which incidentally recited not guilty of embezzlement. The court properly instructed the jury as to the facts which they must find beyond a reasonable doubt before a conviction of larceny could be had, and that unless so found the defendant should be acquitted. Their verdict indicates they found such facts to exist and the evidence sustains their verdict.

Judgment affirmed.

McDONOUGH, C. J., and HENRIOD, WADE, and WORTHEN, JJ., concur.