307 P.2d 212

**STATE of Utah, Plaintiff and Respondent,**

v.

**John Joseph SULLIVAN and Joseph Craven Washington, Defendants and Appellants.**

**No. 8532.**

Supreme Court of Utah.

Feb. 20, 1957.

John Joseph Sullivan and Joseph Craven, Washington, pro se.

E. R. Callister, Jr., Atty. Gen., K. Roger Bean, Asst. Atty. Gen., for respondent.

CROCKETT, Justice.

John Joseph Sullivan and Joseph Craven Washington were convicted by a jury of burglary in the second degree. This appeal challenges the sufficiency of the evidence to sustain the verdict.

The defendants essay to demonstrate that the evidence leaves such doubt as to their identification as the culprits in this crime that they were entitled to a dismissal. For them to prevail on that proposition it must appear that, viewing the evidence and all fair inferences reasonably to be drawn therefrom in the light most favorable to the jury's verdict, reasonable minds could not believe them guilty beyond a reasonable doubt, but would necessarily entertain some substantial doubt of their guilt.[1]

E. R. Sprague and his wife were spending the night of September 27, 1956, in the Twin Oaks Motel in St. George, Utah. At about 3 a. m. he was awakened by a noise and was startled by the presence of a man in the room. He shouted at the intruder, who fled. Mr. Sprague chased after him as he ran out, slipped into the driver's seat of an automobile in which a companion waited, and drove off on U. S. Highway 91 toward Nevada. As the car backed out of the motel driveway, he was able to see and make a mental note of its license number as California 4N 62175. Returning to his room he discovered that his wallet was missing. It had contained

---

1. State v. Shonka, 3 Utah 2d 124, 279 P.2d 711 and authorities there cited.

$98 in currency consisting of four $20 bills, three $5 bills and three $1 bills.

He immediately called the police and reported the incident, describing the felon as a man between 5′ 8″ and 10″ tall, of medium build and weighing about 160 pounds; he reported the escape car as a dark colored four-door sedan with a slanting back and a strip of chrome along the hood above the front fender, which he thought was Pontiac or Chrysler of 1947 or 1948 model.

Between 4 and 5 a. m. these two defendants were apprehended by police at Mesquite, Nevada, about 50 miles from St. George, in a car answering the general description given by the victim, Sprague: a dark blue four-door sedan with a slanted back and a chrome strip along the hood just above the fender. It was a 1947 model, but it was a Nash. Its license plate was California 4N 62126, identical to Sprague's report except the last two digits. The defendants apparently were in quite a hurry as they were speeding 60 to 65 m.p.h. in the town zone, which highway signs mark 30. They had in their possession $130 in currency, the major portion of which was made up of bills of the same denomination as those taken from Mr. Sprague, that is, four $20's, three $5's, some $1's and the balance in other currency.

Mr. Sprague went with officers to Nevada to see the defendants. He first indicated that they did not appear to be the men, but upon further observation and discussion, modified his first impression and said that defendant, Washington, was of the same general build as the man who had entered his motel room, but that the clothes were different; that whereas the burglar had had on light pants and a dark jacket, Washington had on dark pants and a light jacket. Due to his limited opportunities to observe them, he could not positively say that the defendants were the men, but could be no more definite than that Washington was of the same general build as the burglar.

█ It is of course true that the defendants' guilt would have been more satisfactorily shown had Mr. Sprague been able to be more certain in his testimony. However, sometimes the very fact that a witness hesitates to be positive indicates trustworthiness in the testimony he does give. Such testimony, when complemented by surrounding circumstances, may actually be more reliable than more positive identification without such support.

█ The presumption of innocence and the requirement of proof of guilt beyond any reasonable doubt, are indeed of the utmost importance as safeguards against the possibility of convicting the innocent. We scrupulously adhere to them notwithstanding the difficulties encountered and the possibility that some guilty

may escape punishment. It is an ancient and honored adage of our law that it is better that ten guilty go free than that one innocent person be punished. We appreciate the wisdom of that maxim and the importance of according every proper consideration to those accused of crime. Yet the practical exigencies of crime detection and prosecution are to reckoned with and allowance made for the fact that proof beyond all peradventure of doubt could seldom be had. Nor does the law require it. It is to be borne in mind that most crimes, and particularly burglary, are committed with whatever stealth and cunning the perpetrator can devise to escape detection and identification. All law enforcement officers and those victimized can do is to make such observations and piece together such evidence as they are able to obtain and, if it warrants doing so, present it to courts and juries. The standard which must be met is only that proof of guilt be established beyond a reasonable doubt. Where circumstances otherwise strongly suggest guilt, the doubt should be real and substantial and not one that is merely possible or imaginary. All that is required is that the jurors have an abiding conviction of the defendant's guilt such as they would be willing to act upon in the more weighty and important matters relating to their own affairs.

 It is to be conceded that in view of the facts that Mr. Sprague could not positively identify the defendants, the difference in make of car, and the variance of two digits in the license number, a weakness existed in the State's case from which the jury, had they been so minded, may well have entertained a reasonable doubt of defendants' guilt. But it is not sufficient merely that reasonable minds *may* have entertained such doubt. Before a verdict may properly be set aside, it must appear that the evidence was so inconclusive or unsatisfactory that reasonable minds acting fairly upon it *must* have entertained reasonable doubt that defendants committed the crime. Unless the evidence compels such conclusion as a matter of law, the verdict must stand. The very essence of trial by jury is that the jury are the exclusive judges of the weight of the evidence, the credibility of the witnesses and the facts to be found therefrom.

█ The jury could, and undoubtedly did, consider the weaknesses in the State's case above referred to. On the other hand, it was not only their privilege but their duty and responsibility to survey the whole evidence. In doing so they could also properly consider the strength and consistencies in the evidence of the State and all reasonable inferences and intendments fairly and naturally arising therefrom in determining where they believed the ultimate truth lay.

To recapitulate, facts which the jury reasonably may have regarded as pointing toward the defendants' guilt are these: That the defendant, Washington, fitted the general description of the intruder; that it was he who was observed to drive the car away and who was driving when they were apprehended; the similarity of the car as to size, shape, color and the chrome strip across the hood; the money of the same denominations found upon the defendants; the direction of travel and time element which would put the defendants at Mesquite at just about the time they were apprehended; and the identity of the first five of the seven units in the California license plates. The latter fact is more significant when it is realized that Mr. Sprague had but a moment to mentally note these numbers, and that it was some minutes before he could write them down. To remember and record the first five units of a seven unit number correctly would seem to be considerably above par for average acumen. In view of his limited opportunities to observe, and the excitement he must have been under, it is as much to be wondered that he got the first five right as that he erred as to the last two. It does not seem at variance with reason for the jury to have seen in the whole evidence here a set of facts and circumstances which fashioned a cloak of guilt around the defendants in which they saw no reasonable doubt.

Defendants also assert that they were denied due process of law as guaranteed by the 14th Amendment, because of the manner in which the district attorney conducted the prosecution, particularly in that he attempted to introduce incompetent and hearsay evidence. Defense counsel was most assiduous in making objections to the evidence offered by the State, and the trial court uniformly sustained them wherever proper. It is not to be questioned that a prosecutor has the duty to proceed in good faith and not to offer evidence which he knows is objectionable for the ulterior purpose of informing the jury that such evidence may exist. Without reciting the detail thereof, we find in the instant record no such abuse. Nor do we find any erroneous rulings prejudicial to defendants which would justify a reversal of their conviction.

Affirmed.

McDONOUGH, C. J., and WADE, WORTHEN and HENRIOD, JJ., concur.