351 P.2d 96

STATE of Utah, Plaintiff and Respondent,

v.

Mary VATSIS and John Vatsis, Defendants and Appellants.

No. 8989.

Supreme Court of Utah.

April 20, 1960.

6. 108 Utah 407, 160 P.2d 721.
7. 109 Utah 1, 163 P.2d 314.

Rawlings, Wallace, Roberts & Black, Salt Lake City, for appellants.

Walter L. Budge, Atty. Gen., Homer F. Wilkinson, Asst. Atty. Gen., for respondent.

CALLISTER, Justice.

The defendant, Mary Vatsis, was charged jointly with her husband, John Vatsis, with the crime of obtaining money by false pretense.[1] A motion to dismiss the action against John Vatsis was granted by the trial court and the issue of defendant's guilt was submitted to the jury. From a judgment of conviction entered upon the jury's verdict of guilty, the defendant appeals.

John Vatsis owned and operated an automobile dealership, known as the V & H Motor Company, in Price, Utah. The defendant acted as office manager, kept the books, and sold automobiles. The Company had an arrangement with Commercial Credit Corporation whereby the latter would purchase from the Company conditional sale contracts for the sale of automobiles.

1. 76-20-8, U.C.A.1953: "Obtaining money by false pretense.—Every person who knowingly and designedly, by false or fraudulent representations or pretenses, obtains from any other person any chose in action, money, goods, wares, chattels, effects or other valuable thing, with intent to cheat or defraud. any person of the same, if the value of the property so obtained does not exceed $50, is punishable as in cases of petit larceny, and when the property so obtained is of the value of more than $50, the person so offending is punishable as in cases of grand larceny."

On or about March 12, 1957, the Commercial Credit Corporation purchased from defendant a contract dated March 9, 1957, wherein V & H Motor Company appeared as seller and one Ann Troulis as buyer of a certain Buick automobile. Commercial Credit paid the sum of $2,175 for the contract.

It is admitted by the defendant that she signed the name of Ann Troulis to the contract and that the said Buick automobile was subsequently sold, on April 26, 1957, to a third person who paid cash therefor and received title to the car. After this sale, the defendant personally made three monthly payments upon the Troulis contract to Commercial Credit in the name of Ann Troulis.

The State produced testimony to the effect that the defendant had sold other fictitious contracts and had even bragged about it.

The defense was that Ann Troulis had given the defendant authority to sign her name to the contract and that, after the contract had been sold, Ann Troulis changed her mind and advised defendant that she could not purchase the automobile.

At the preliminary hearing Ann Troulis testified unequivocally that she had not given the defendant authority to sign her name to the contract. However, at the trial Ann Troulis changed her testimony and said, in effect, that she may have given the authorization, she wasn't sure.

In explanation of the discrepancy, Miss Troulis stated that representatives of Commercial Credit had paid her a visit prior to the preliminary hearing and requested that she sign a statement. This she refused to do and was told that if she didn't, she might have to pay for the car. According to the witness, it was the fear of being forced to pay for the car that prompted her to testify as she did at the preliminary hearing.

Miss Troulis further testified that she never took possession of the automobile, nor could she remember having seen or driven such a car.

█ It is the contention of the defendant that the State failed to prove that she forged the name of Ann Troulis to the contract. It may well be that if the defendant had been charged with the crime of forgery, the State would have to prove not only that Ann Troulis did not sign the document, but also that her name was signed without authority.[2] However, in the instant case the amended information charged the defendant with obtaining money by false pretenses. The necessary elements of this offense are (1) a false or fraudulent representation (2) made knowing it to be such (3) with intent to cheat or defraud the person to whom the repre-

2. State v. Jones, 81 Utah 503, 20 P.2d 614.

sentation was made; (4) an actual fraud must have to be perpetrated in the sense that something of value was obtained and the victim lost something of value; and (5) the representation must have induced the owner to part with his property in the sense that the owner parted with his property in reliance upon the truth of the representation.[3]

■ We believe the evidence presented by the State was sufficient to prove these essential elements. The defendant obtained money from Commercial Credit Corporation by representing that the contract was signed by Ann Troulis. If Ann Troulis gave the defendant authority to sign her name, this was matter for affirmative defense. The State was not obligated to prove lack of authority as an essential element of the crime charged.

■ The jury was not bound to believe defendant's testimony that she had authority to sign the name of Ann Troulis to the contract, it was their prerogative to give it only such weight as they thought it entitled to considered in the light of all the facts and circumstances surrounding the occasion, including the self-interest of the witness.[4] The jury could decide that defendant's story was in conflict with her actions.

Certainly, it was not unreasonable for the jury, who had the benefit of observing her demeanor, to arrive at the conclusion that Miss Troulis told the truth at the preliminary hearing, rather than at the trial.

■■ The dissenting opinion has viewed the defendant's claims and evidence in a light most favorable to her. However, we must view all the evidence, and all fair inferences reasonably to be drawn therefrom, in the light most favorable to the jury's verdict. So doing, it cannot be said that reasonable minds could not believe the defendant guilty beyond a reasonable doubt.[5]

The assignment of error by the defendant that the court erred in instructing the jury is without merit.

Affirmed.

CROCKETT, C. J., and HENRIOD and McDONOUGH, JJ., concur.

WADE, Justice (dissenting).

I dissent. I think that a finding that defendant forged the name of Ann Troulis to the conditional sales contract, or that the contract was fictitious and there was no bona fide sale of the Buick car, would be unreasonable and not supported by the evidence.

3. State v. Timmerman, 88 Utah 481, 55 P. 2d 1320, 56 P.2d 1354.
4. State v. Shonka, 3 Utah 2d 124, 279 P. 2d 711.

5. State v. Sullivan, 6 Utah 2d 110, 307 P. 2d 212.

Defendant testified to the following facts: She demonstrated the Buick car to Ann at her home on the evening of March 8, 1957, and Ann agreed to buy the car with the reservation that she could cancel the contract in a few days if she decided that the obligation of this car and a deep freeze she had already bought would be too much. Defendant did not have a form of a conditional sales contract with her, so Ann authorized her to prepare one when she returned to the office and sign her name to it and do what was necessary to arrange credit for the purchase of the Buick car. The car was left with Ann, but on March 13, 1957, after defendant had sold the contract but before she had cashed the check which she received therefor, Ann canceled the contract and defendant testified that she notified the Commercial Credit Corporation of such cancellation and was authorized to cash the check and send the money to them by check.

Defendant testified that she notified Mr. Green, the Unit Manager of the Commercial Credit Corporation, of the cancellation of the Troulis contract by telephone. Mr. Green admitted that he remembered the conversation and that defendant notified him of the cancellation of another contract which had been purchased from the V & H Motor Co. at the same time, and paid for by the same check as the Troulis contract, but testified that in that same conversation, "[S]he could have but I don't remember that" she told me the Troulis contract had also been canceled.

On the preliminary hearing Ann denied that she bought this car or authorized defendant to sign her name to the contract. On the trial, however, Ann conceded that she may have authorized defendant to sign her name to the contract, and that the Buick car may have been left in her possession until after she canceled the contract, and that she may have authorized defendant to do whatever was necessary to arrange credit for such purchase. She testified that she had been "bulldozed" explaining that three representatives of the Commercial Credit Corporation visited her before the preliminary hearing, asking her to sign a statement which she refused, and one of them said, "Young lady, if you don't sign you will end up paying for this car." She further said that at the preliminary hearing she had testified, "No I didn't give her permission to use my name," because I "thought I would be mixed up in getting a car I didn't know anything about and I just felt my only answer was to say 'no' because I was afraid and I had been threatened."

At the trial she testified that she did not buy the Buick car. Apparently she merely meant that she did not complete the purchase, because she admitted that she may have authorized defendant to sign her name to the contract and leave the car in her possession and arrange to finance the sale but later canceled the contract to purchase.

If there was a bona fide contract by Ann Troulis to purchase this Buick car then no fraud was perpetrated. If the contract to purchase was valid when sold to the finance company, the fact that it was later canceled does not make the sale of the contract fraudulent. The State has the burden of eliminating all reasonable doubt of the material facts charged. One material fact charged was that there was no bona fide sale of the Buick car but that the contract to purchase it was fictitious. Since Ann Troulis, who purportedly made the contract, was not sure she had not authorized it, the State has failed to eliminate all reasonable doubt that the contract was invalid. So I think the case should be reversed with directions to dismiss the action.