## STATE v. McNAUGHTAN.

No. 5582.   Decided March 18, 1937.   (66 P. [2d] 137).

For former opinion, see 92 Utah 99, 58 P. (2d) 5.

*H. L. Mulliner, Chris Mathison, Karl V. King,* and *Thomas W. Mackay,* all of Salt Lake City, and *B. W. Dalton,* of West Los Angeles, Cal., for appellant.

*Joseph Chez,* Atty. Gen., *Zelph S. Calder,* Asst. Atty. Gen., and *Hugh W. Colton,* Co. Atty., of Vernal, for the State.

WOLFE, Justice.

A decision of this court previously rendered will be found in 92 Utah 99, 58 P. (2d) 5. This opinion is on rehearing granted.

"Defendant was charged with and convicted of the crime of altering marks and brands on six sheep with the intent of stealing the same. It is charged in the information that four of the sheep so marked and branded were the property of John L. Siddoway, one the property of Raymond Siddoway, and one the property of Wm. H. Siddoway. The character of the changes made in the earmarks of the various sheep is alleged in the information. It is also alleged that all of the sheep in question were branded with red paint, five with a circle-bar, and one with a daub. The offense is alleged to have been committed 'in Uintah County, State of Utah, near the boundary line of Uintah and Daggett Counties, State of Utah.' A trial resulted in a verdict of guilty as charged." 92 Utah 99, at page 101, and 58 P. (2d) 5, at page 6.

Defendant appeals.

It is again urged that the evidence is insufficient to sustain the verdict, especially in that there is insufficient evidence that defendant altered or marked these sheep with intent to steal. There is sufficient evidence from which the jury could infer that these six sheep belonged to the different Siddoways. Five of the six sheep were in the courtroom before the jury; the sixth had been killed by a dog, but there was evidence as to the earmarks and brands found on that.

The defendant, on the morning of September 10, 1933, drove to the Siddoway corral. He was present when the Siddoways separated these six sheep from their herd in the corral for stray sheep and he then claimed them and loaded them in his trailer. The Siddoways earmarked their sheep in different ways, but, in the case of all of these six sheep, the earmarks as they appeared on September 10th were one or another of the Siddoways' earmarks with an additional part of the ear cut away. John L. Siddoway had as part of his earmark an upper slit in the left ear. This upper slit was apparently continued through the whole width of the ear so as to make it an underslope, and the additional cuts to do so had fresh scabs on them and, when the ears were pressed, blood oozed out of them where they had been recently cut, but the upper slit, which was an old cut, was calloused and hairy. Ray Siddoway's sheep were earmarked with an underbit on the right and an upperbit on the left ear. A bit is a curved indentation on the ear as would be formed if a piece had been bitten out. An upperbit is on the upper side of the ear and a lower bit on the down side. In addition, his sheep were marked with an underslope (an end of the ear cut off so as to slope from the end of the ear under toward the head of the sheep) on the left ear. The change in the earmarks of these sheep was evidenced by a cutting away of the end of the right ear.

Wm. H. Siddoway's sheep were earmarked by an upperbit and an underslope on the left ear. Here also the fresh cut was by a cutting away of the end of the right ear so that each of the earmarks of these last two Siddoway sheep were comparatively freshly changed by executing crops on the right ears. It would be most unlikely that three different earmarks would be so changed in the fashion they appeared to be, by mistake, or that the person that so marked them would have acquired sheep from others with all of the stale part of the earmarks corresponding with the three different earmarks of the Siddoways. There was evidence also that wool brands of fresh red paint had recently been placed on the sheep, which fact was made evident because it stained the fingers when handled; that, when the Siddoways branded their sheep after they were sheared in the spring, they used green paint; that some of the sheep in controversy seemed to have the Siddoway brands under the brand of fresh red paint. There is ample evidence to support the fact that these sheep were the Siddoway sheep. There is evidence by several parties that defendant himself stated that he branded these sheep and the brand of red paint was the defendant's brand. The defendant in his evidence testified that the sheep he branded he had taken from his home in Vernal, where he had them for some time in an inclosure, to his herd located on his forest allotment and that he branded them and turned them into the herd. But several witnesses testified that he had stated in their presence that he branded these six sheep. There is, therefore, ample evidence that defendant altered the marks and brands on these six sheep and that they were Siddoways' sheep. But defendant strenuously contends that there is no evidence that he marked these sheep with intent to steal them. We think that, after the jury definitely came to the conclusion that these were the Siddoways' sheep and that their brands and marks were altered, and that defendant had done the marking with his brand, the jury could conclude from the additional fact that he claimed them on the

morning of September 10th, that he purposely changed them so he could claim them.

That a person alters a brand with intent to steal almost always must be inferred from circumstances. It is most likely that the person who made the cuts in the earmarks of three differently marked sheep in regard to which there is ample evidence that they belonged to others, knew that they belonged to others. He might perhaps make a mistake as to one mark, but here were sheep with three different types of earmarks all belonging to others than defendant. The evidence is that he stated he marked them. Later he claimed them. It appears to us there is an ample interlocking of the circumstances from which the jury could reasonably conclude that he altered the brands with intent to steal. It was held in *State* v. *Potello,* 40 Utah 56, 119 P. 1023, that the accused cannot complain of the insufficiency of the evidence if he proved a case for the State. In this case the jury could well believe the evidence of others that defendant told them that he had branded these six sheep and still did not need to believe that these six sheep were in the thirty-two which he claimed he took from his home. The evidence that he branded these six sheep came from admissions it was testified he made to others. The evidence that he took thirty-two sheep from his home and branded them in Daggett county and the inference which was sought to be raised by it that these six sheep were among those thirty-two sheep could be disbelieved, or, if believed, the jury could conclude that he had these Siddoway sheep among these thirty-two head. The two statements were made at different times and the jury might well have believed that he stated correctly when he told others he marked these six sheep and that he was later compelled, in order to explain away those admissions, to testify to the effect that these six sheep were at his home in Vernal. And, believing his admission that he marked these sheep, the freshness of the marks was such that the jury could well have disbelieved that he did it back in July when he says

he took the thirty-two sheep from his home and marked them at that time.

We have considered all the cases cited by defendant, and we find none where it was held insufficient to show intent to steal where there was evidence tending to show that defendant did mark as his what the jury could readily infer he must have known was not his. In *State* v. *Chynoweth*, 41 Utah 354, 126 P. 302, the calf which was branded by defendant had no marks on it. Moreover, there was evidence of statements made by and conduct of the defendant in the presence of those at the corral when he was accused of being a "sheep thief," and statements made by him to Wm. H. Siddoway, which had some tendency, taken ·with the remainder of the testimony, to show that he was guilty.

The court instructed the jury in instruction No. 9, in part, as follows:

"And you are further instructed that, in order to find the defendant guilty, you must believe from the evidence beyond a reasonable doubt, not only that the crime was committed in Uintah County, Utah, but that all the material elements of the Information are so established."

McNaughtan testified that these six sheep were among the thirty-two others at his home in Vernal and that he transported them to a point about eight miles north of the water shed on the Manila-Vernal road and there marked them. He testified this point was in Daggett county, and we shall for the moment presume that it was. But under instruction No. 9 the jury must have disbelieved that these sheep were marked by defendant in Daggett county. Though uncontradicted, it was within their prerogative to disbelieve him. Moreover, his evidence may find contradiction in the physical evidence plus the statements of others that he had branded these sheep.

Is there any evidence from which the jury could have concluded that these sheep were marked by defendant in Uintah county? To quote again from our former decision, wherein the facts are ably assembled, it was stated:

"That at the time of the commission of the alleged crime, and prior thereto, the Siddoways ranged their sheep on the Uintah Mountains in Uintah county, Utah. The northern boundary of their range extended to the boundary line between Uintah and Daggett counties. That adjoining the territory where the Siddoway sheep ranged and to the north thereof in Daggett county, Utah, the defendant ranged his sheep; that on or about September 10, 1933, the Siddoways drove their sheep to a corral in what is known as Lansing Draw on Diamond Mountain, in Uintah county; that one of the purposes of driving the sheep belonging to the Siddoways into the corral was to remove from their herd stray sheep which might be found in their herd."

As further stated in that opinion, there is evidence tending to show that the herd in which the sheep in question were found September 10th was ranging in Uintah county at the time within which these sheep were marked and branded, testified to be by the freshness of the cuts and the marks about 15 days. The defendant stated he marked them the preceding July, by which time the cuts would have been fully healed. There is evidence, as stated in the previous opinion, to show that the sheep in question were in the Siddoway herd in the spring and early summer when they were branded and earmarked. In a case such as this, where the only one who may know where the animals were misbranded is disbelieved by the jury as to the place where he says he did the acts which the jury found to be criminal, there need only be such evidence from which the jury might infer that such branding could have been done in the county where defendant is prosecuted. It may be that, where the jury conclude that a person committed a certain crime and choose to disbelieve his evidence as to the place where he says he did the acts which are a component of the crime, and he is the only party who could really tell in which county the acts had been done, and the acts could with equal possibility have been done in the county where he is prosecuted as in the county wherein he says he did them, the jury could come to the conclusion that they were done in the former county. But as to this we do not need to conclude, for there is evidence sufficient to establish a locale in Uintah county from

which the jury could find that the brands were altered in Uintah county.

Defendant complains that the lower court by its instruction No. 6 permitted the jury to range over four charges, whereas only one is charged by the information. Section 103-34-8, R. S. Utah 1933, makes punishable, as in cases of larceny,

"Every person who" (1) "marks or brands," (2) "or who alters or defaces the mark or brand on any * * * sheep * * * belonging to another, with" (3) "intent thereby to steal the same," (4) "or to prevent identification thereof by the true owner."

While it is true that a person may brand or alter or deface a brand with intent to prevent identification for spite or some other reason than intent to steal, it is certainly true that, where a person brands or alters or defaces a brand with intent to steal, he certainly does it for the purpose of preventing identification. The former includes the latter, and the restriction in this section which contained the alternative, "or to prevent identifictaion thereof," etc., was merely another way, in this case, of saying "with intent to steal." Also, he who marks or brands may by the same act alter or deface a mark or brand. The additional marking to the ears of sheep having three combinations of earmarks in the way it was done seems to carry conviction that it was done to prevent identification by the owner which, when added to the fact that defendant claimed them, presents sufficient evidence that defendant's intent to prevent identification was for the purpose of obtaining them himself. And a marking or branding in such a case as this is so inextricably connected with altering or defacing a mark or brand that we would justifiably expose ourselves to the criticism of being overtechnical if we held that the words "marking and branding" and "altering or defacing marks or brands" were not in this, and perhaps in most cases, interchangeable. Section 103-34-8 did not mean to set out four separate offenses, but meant to particularize as to several slightly

different ways in which one offense might be committed. Accurate specification of slightly different ways of accomplishing a crime cannot be twisted into a tenable contention that different crimes were meant to be enumerated. A discussion of the same charge under different names or aspects is contained in *State* v. *Telford*, 89 Utah 22, 56 P. (2d) 1362, a recent Utah case not cited by either party. Also *State* v. *Jenson*, 74 Utah 527, 280 P. 1046.

Instruction No. 6 seems quite favorable and fair to defendant. We see no error in giving it. This also answers defendant's first contention that there was no evidence to sustain the information, because that charged marking and branding with intent to steal, whereas throughout the trial the evidence offered to convict was as to altering a brand. As stated before, marking and branding may not only be on an unmarked or unbranded animal, but may be done so as to at the same time alter or deface an existing brand or mark.

As to the sixth contention of defendant that he should have been permitted to explore the mind of the venireman, Justice, as to whether he was indebted to the bank of which Wm. H. Siddoway was president, the writer of this opinion, in a dissent to the former opinion on this case, expressed the view that the exception to the court sustaining such objection was well taken and the ruling was prejudicial error. But an inspection of the transcript of the evidence actually reveals the fact that Mr. Justice answered that he was not indebted to the bank during 1933. After his answer the court sustained the objection to the question, but, as to this venireman, counsel had all the information which his question was designed to reveal. It is said the ruling formed the law of the case and prevented Mrs. Charles Fox from being asked the same question. The question was not asked of Mrs. Fox. The answer of Justice cured the error of the court, if any, in regard to the ruling in relation to his voir dire. The question should have been asked, therefore, of Mrs. Fox. The examination of Mrs.

Fox by both parties satisfied them that she would do the fair thing by both sides.

While we think it is best for anyone interested in the outcome of a case to have no contacts with the jurymen which might even give the appearance of attempting to cultivate them, the handshaking incident by Wm. H. Siddoway was brought to the attention of the court. He, apparently, considered it unprejudicial. This incident, standing alone, was not prejudicial, nor can we say that the court abused its discretion in refusing to grant a new trial on that account.

The judgment is affirmed.

FOLLAND, C. J., and HANSON, MOFFAT, and LARSON, JJ., concur.