[Crim. No. 15749.  Second Dist., Div. Four.  Nov. 25, 1969.]

THE PEOPLE, Plaintiff and Respondent, v.
GLENN LORENZO ADAIR, Defendant and Appellant.

[redacted]

## COUNSEL

Donald Kottler, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Elizabeth Miller and Melvin R. Segal, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**DUNN, J.**—After a nonjury trial, appellant was found guilty of first degree robbery (Pen. Code § 211), as fixed by the court. Proceedings were suspended and appellant ordered placed on probation. His appeal is from that order (Pen. Code § 1237, subd. 1). His only contention is that photographs of him were exhibited to witnesses at a time when defense

counsel was not present, thereby depriving him of his constitutional rights.

On the night of May 20, 1967, appellant, at gunpoint, held up Mr. Sousa, manager of a market in Glendale, and obtained the market's receipts. At the preliminary hearing the manager and two fellow employees, McShane and Jones, identified appellant as the robber. Each had observed appellant for a number of minutes during the holdup and described his height, weight, distinguishing marks and clothing. During the cross-examination of Sousa and Jones at the preliminary hearing, appellant's counsel asked if photographs had been shown to them by his associate attorney. They stated photographs had been shown and Sousa testified he also was shown photographs by the investigating police officer.

At the trial, the transcript of testimony given at the preliminary hearing was received in evidence by stipulation, and the prosecution then rested. Appellant based his defense upon an alibi. He testified he was at a party; his testimony was corroborated by several witnesses. The associate attorney was then called and testified that he had shown photographs to Sousa and McShane and attempted to show them to Jones, but Jones would not be interviewed. He testified Sousa did not recognize appellant in any photograph but that McShane correctly identified his picture. In rebuttal, respondent called the investigating police officer who testified that on May 31 and June 1, 1967, (apparently before the showing of pictures by the attorney mentioned) he exhibited 20 photographs to McShane and Sousa, respectively, and each correctly selected a single photograph of appellant from among them. The 20 photographs were then received into evidence. They were of adult male Negroes, as is appellant, and all were in the same age group as appellant.

■ At the trial, appellant made no objection to the identification testimony nor did he object to the introduction, on rebuttal, of the prosecution's 20 photographs. He here contends that his failure to object is excused. Admittedly, he stipulated to the introduction of the transcript of testimony given at the preliminary hearing; this contained the testimony of Sousa, McShane and Jones identifying appellant as the robber. He now claims his failure to object is excused because it was not until the prosecution's rebuttal testimony was admitted that any basis for earlier objection became apparent. It then was too late. This claim is not entirely sound, for Sousa testified at the preliminary hearing, as earlier pointed out, that the investigating officer had shown him photographs. Appellant was thus alerted to that fact and easily could have declined to stipulate to the use of the preliminary transcript, could have objected at trial to any identification testimony and, by *voir dire,* could have brought out the facts on which he now relies. Absent these possibilities he still could have moved,

at the trial, to be relieved of his prior stipulation and to strike the testimony. None of the available objections or motions was made during trial; the trial court was not made aware of appellant's contentions, presently made, and was thus deprived of an opportunity to consider and rule on them. Appellant's failure to raise these issues at the trial level is fatal to his appeal.

Nor can appellant here claim the benefit of a contention that trial counsel's tactics amounted to inadequate representation. Had the objection or motion been seasonably made, such would and should have been overruled.

Appellant's constitutional rights were not violated by the prosecution when, under the circumstances of this case, they showed the photographs to the witnesses.[1] Appellant rests his claim upon *United States* v. *Wade* (1967) 388 U.S. 218 [18 L.Ed.2d 1149, 87 S.Ct. 1926] and *Gilbert* v. *California* (1967) 388 U.S. 263 [18 L.Ed.2d 1178, 87 S.Ct. 1951]. They do not assist him. Those cases dealt with the rights of an accused to have counsel present at a police lineup wherein he was exhibited for identification after already being represented by counsel. Sixth Amendment rights to the assistance of counsel were held to have been violated. Preliminarily, it is to be noted that here the officer exhibited the photographs to the witnesses on May 31 and June 1, 1967, before the June 12, 1967 decisions of *Wade* and *Gilbert*. These decisions were held to have no application to lineups occurring before such date. *People* v. *Feggans* (1967) 67 Cal.2d 444, 448 [62 Cal.Rptr. 419, 432 P.2d 21].

More important is the fact appellant was not asked to confront his accusers; the officer merely showed 20 photographs to each witness and asked if appellant was among those shown. If they were unable to identify him the case might have been dropped; their viewing of the pictures was, therefore, significant. But the private questioning of any witness is significant. His ability to recall, the accuracy of his recollection, his ability clearly to relate what he has observed and many other factors should be ascertained before a party decides to call a witness to the stand. These are all significant factors in seeking to determine what credibility, if any, a court or

---

[1]Appellant places great stress on his assertion that he already had been arrested when the photographic identification took place, contending the photographs were used to confirm an existing arrest and not merely to identify a fugitive. It is not clear from the record when the photographic identification occurred in relation to appellant's arrest. The probation report (made part of the record on appeal on motion of appellant's counsel) states appellant was arrested by Compton police and turned over to Glendale police on June 1, 1967. McShane was shown the photographs on May 31st. However, the photographs were shown to Sousa on June 1st, apparently after the arrest. For the purposes of this discussion we assume the photographs were shown to both witnesses after the arrest had occurred.

jury is likely to attach to a witness's testimony. To hold that an accused has a right, founded upon the Constitution, to have his attorney present at such trial preparation conferences would be fatuous. ■ The constitutional right to the assistance of counsel does not confer the privilege of insinuating him into the prosecutor's office at all important phases of trial preparation. The difficulties, recognized in *Wade* and *Gilbert,* encountered by the accused in seeking to reproduce at trial the evanescent subtleties of a pretrial police lineup are far different from attempting to reproduce procedures followed at a pretrial photographic identification conference. The photographs, with any shortcomings in their quality, lighting, exposure and the like, are available to examine. The manner in which they were exhibited to the witnesses readily can be explored on cross-examination and, in fact, that was done here.

In *People* v. *Pettersen* (1968) 268 Cal.App.2d 263, 267-268 [73 Cal. Rptr. 693], the court quoted from *Simmons* v. *United States* (1968) 390 U.S. 377 [19 L.Ed.2d 1247, 88 S.Ct. 967] as follows: " 'Despite the hazards of initial identification by photograph, this procedure has been used widely and effectively in criminal law enforcement, from the stand-point both of apprehending offenders and of sparing innocent suspects the ignominy of arrest by allowing eyewitnesses to exonerate them through scrutiny of photographs. The danger that use of the technique may result in convictions based on misidentification may be substantially lessened by a course of cross-examination at trial which exposes to the jury the method's potential for error. We are unwilling to prohibit its employment, either in the exercise of our supervisory power or, still less, as a matter of constitutional requirement. Instead, we hold that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.' "

Other United States courts have subsequently reasoned as do we. In *McGee* v. *United States* (10th Cir. 1968) 402 F.2d 434, cert. denied (1969) 394 U.S. 908 [22 L.Ed.2d 220, 89 S.Ct. 1020] the following appears (at p. 436): "After the identification testimony of two witnesses had been received at the trial pertaining to count number two, counsel for the defendant moved to strike such testimony because of the out of court identification of photographs of the defendant in the absence of counsel. This motion to strike was denied. In support of this contention here appellant relies on *United States* v. *Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) and *Gregory* v. *United States,* 125 U.S. App.D.C.

140, 369 F.2d 185 (1966). Those cases concern the so-called lineup identification and are factually different from this case. What is complained of here is nothing more than preparation for trial by the Government. No lineup identification is involved and there was no form of confrontation of the accused. The trial judge was correct in refusing to extend the doctrine of *Gregory* and *Wade* and in denying the motion to strike the questioned evidence."

And in *United States* v. *Clark* (E.D.Pa. 1968) 289 F.Supp. 610 the following is stated by the court (p. 621): "[I]t is likely that if any form of prejudice taints this type of procedure it is prejudice which arises from the nature and/or type of photographs displayed. By using these photographs in his cross-examination of government witnesses, defense counsel easily can reveal such prejudice and thereby impugn the related identification testimony."

■ Next is the question whether the record discloses any unfairness to appellant in the prosecution's identification procedures, which might indicate a denial of due process rights. We find none. The trial judge examined the photographs and concluded: ". . . there seems to be a reasonably sufficient number of individuals who bear a rough resemblance to the defendant's age and general appearance. I certainly can't say that it is an unfair assortment of photographs." The investigating officer testified he showed the 20 photographs to McShane on May 31 and to Sousa on June 1, 1967. Appellant's photograph was "some place toward the center of the stack." Each of the witnesses, acting independently of the other, selected without difficulty appellant's photograph as depicting the person who committed the robbery. There is no evidence the officer told a witness that appellant was under suspicion or had been arrested, nor did he suggest in any way that appellant's photograph should be selected. From the record, it is clear that the identification procedure was not suggestive, impermissibly or otherwise.

■ We thus conclude an accused, though represented by counsel, has no constitutional right to have his attorney present at the prosecution's pretrial photographic identification conferences and, secondly, that no violation of appellant's due process rights are here shown.

The order is affirmed.

Files, P. J., and Kinglsey, J., concurred.