STATE OF CONNECTICUT *v.* THOMAS P. LALLY

House, C. J., Loiselle, MacDonald, Bogdanski and Longo, Js.

Argued December 5, 1974—decision released February 11, 1975

*Nicholas P. Cardwell,* for the appellant (defendant).

*Arnold M. Schwolsky,* assistant state's attorney, with whom, on the brief, was *John D. LaBelle,* state's attorney, for the appellee (plaintiff).

HOUSE, C. J.  The defendant was found guilty by a jury of the crime of murder in the second degree and appealed from the judgment rendered on the verdict.  He assigned as error and has briefed three evidential rulings of the court admitting into evidence the in-court identification of the defendant, rulings permitting a witness to qualify as an expert in fingerprint identification and to testify as to his opinion, and has made a claim that the evidence offered by the state was insufficient to support the verdict.

A brief review of the evidence will serve to place the other claims of error in perspective before we consider them in detail; so, we first consider the defendant's contention that the state's evidence was

not sufficient to support the jury's verdict. Such a claim is tested by the evidence printed in the appendices to the briefs. *State* v. *Saia,* 167 Conn. 286, 287, ____ A.2d ____ ; *State* v. *Johnson,* 166 Conn. 439, 440, 352 A.2d 294.

On January 26, 1970, Ross Thomas, a clinical psychologist, occupied a two-room apartment which he used as an office-dwelling at 442 Farmington Avenue in Hartford. At about 9:45 p.m. on that date, Joseph N. Tobin, Jr., a director of special services at the Institute of Living in Hartford, visited Thomas. While he was there, Thomas received a telephone call from a person who wished to see him. At about 1:15 a.m. a person, identified in court by Tobin as the defendant, arrived. Tobin remained with the two men in the well-lighted room for about fifteen minutes and then left. The defendant was wearing an outer coat of brownish material which he kept on while he was in the apartment. At about 5:40 a.m., Officer Walter S. Parker of the Hartford police department saw the defendant at the Quartet Restaurant on Farmington Avenue. He had previously seen him at a gasoline station about two blocks west of 442 Farmington Avenue. While at the restaurant, Officer Parker received information about a possible crime and went to the Thomas apartment at 442 Farmington Avenue where he discovered the body of Thomas, who had been twice shot through the head by .32-caliber bullets fired at close range. George A. Kendall, Jr., worked at a gasoline station on Park Street, and, at about 3 a.m. on January 27, the defendant came to the station and stayed for about one-half hour before leaving by taxi. Kendall noticed that the defendant's trench coat was spotted with blood. William F. Best was a taxi driver. He answered

a call to Kendall's gasoline station on the morning of January 27 and transported the defendant to the Quartet Restaurant on Farmington Avenue. Another taxi driver, Irving S. Caplan, at about 6 a.m., answered a call and transported the defendant from the Quartet Restaurant to the Hilton Hotel in Hartford. At the hotel, the defendant was stopped at the registration desk by three police officers. There was a spattering of blood on his trench coat. He was searched and a revolver was removed from his pocket. When taken, the revolver contained two spent shells. The defendant was arrested for carrying a pistol without a permit.

The Thomas apartment was inspected by the police and tests were made for latent fingerprints. One was found on an ashtray and was identified by Detective Michael Amaruso as made by the defendant. An autopsy disclosed that the death of Thomas was caused by bullet wounds to the head. The bullets were recovered and turned over to Walter E. Perkins, director of the Hartford crime laboratory, who conducted ballistics tests and testified that in his opinion the bullets recovered from Thomas' body had been fired from the revolver which had been taken from the possession of the defendant at the Hilton Hotel. Several doctors testified as to their findings and opinions with respect to the defendant's mental condition, including Louis Gold, a psychiatrist, who testified that Lally did not lack the capacity to understand the wrongfulness of his behavior or to conform his behavior to the requirements of the law.

This is but a brief summary of the evidence which the jury had for consideration, but it suffices to show that there was no merit to the defendant's

motion to set aside the verdict on the ground that it was against the evidence, and to show that the court committed no error in denying the motion.

The defendant's first several assignments of error are addressed to rulings of the court which permitted witnesses Tobin, Kendall, Best and Caplan to make an in-court identification of the defendant and to describe their respective contacts with him on the night of the homicide. The rulings were all made by the court in a preliminary hearing in the absence of the jury on the defendant's motion to suppress the in-court identification. The defendant did not brief the assignment of error addressed to Caplan's testimony and identification so it is considered to have been abandoned. *State* v. *Croom,* 166 Conn. 226, 232, 348 A.2d 556; *State* v. *Brown,* 163 Conn. 52, 55, 301 A.2d 547. While the testimony of each of the other three witnesses related to the particular circumstances of his contact with the defendant, each of them, at the trial, identified the defendant as the person with whom he had contact on the early morning of January 27, 1970, and testified as to the circumstances of that contact and as to the opportunity each had to observe him. In each instance the court concluded from the testimony at the preliminary hearing that each witness' in-court identification of the defendant was based upon his recollection of his contact with the defendant on the early morning in question.

The defendant claims that the court should not have permitted the in-court identification by the three witnesses because each of them had previously identified the defendant to the police from photographs shown to each of them by the police in the absence of the defendant and his counsel. The find-

ing of the court discloses that on the morning of the homicide each of the three witnesses went to the police station and each, separately, was shown several photographs, including one of the defendant, and each witness selected the photograph of the defendant as the man with whom he had had contact earlier in the morning—Tobin at Thomas' apartment, Kendall at the service station, and Best in conveying the defendant by taxi from the station to the restaurant.

It is the contention of the defendant, relying upon and quoting from the decision of the United States Supreme Court in *Wade* v. *United States,* 388 U.S. 218, 235, 87 S. Ct. 1926, 18 L. Ed. 2d 1149, that, since he was already under arrest, this pretrial identification by photograph for the police in the absence of the defendant and counsel for him violated his constitutional rights and rendered inadmissible the courtroom identification as "the fruit of a suspect pretrial identification which the accused is helpless to subject to effective scrutiny at trial" because "the accused is deprived of that right of cross-examination which is an essential safeguard to his right to confront the witnesses against him."

The defendant lays much stress on the fact that all of the photographs submitted to the identification witnesses by the police were not preserved and were not made available for examination in court. He contends that the photographs used in a pretrial identification procedure must be introduced as part of the state's case in order to satisfy the burden of clear and convincing proof that the in-court identification was not "tainted," and that if the state fails to introduce them, then, as a matter of law, the trial

court should rule inadmissible any in-court identification testimony by a witness. Obviously the retention and preservation for examination at trial of the photographs used at a pretrial identification is a highly desirable practice and, depending upon the circumstances, may greatly aid the prosecution in sustaining its burden of proof or, on the other hand, may mitigate the dangers of misidentification owing to the suggestiveness of the photographs themselves. Although the practice is highly desirable, it cannot be held, as a matter of law, to be a necessary condition precedent to a permissible in-court identification.

The short answer to the defendant's contention lies in the finding of the court as stated in its ruling: "I conclude that each of the witnesses had an independent basis for making the identification apart from anything which occurred at the police station, and I am not aware of anything which occurred at the police station which was in any way unduly suggestive. Therefore, the conclusion of the Court is that each of them had an independent basis to make the in-court identification, and the objection is overruled in that respect." The court's unattacked finding of fact as to the identification by photograph procedure at the police station fully supports its conclusion. The procedure followed and the ruling of the court were fully in accord with the holdings of this court in *State* v. *Duffen*, 160 Conn. 77, 273 A.2d 863, cert. denied, 402 U.S. 914, 91 S. Ct. 1397, 28 L. Ed. 2d 657, and *State* v. *Oliver*, 161 Conn. 348, 288 A.2d 81.

In the *Oliver* case, we observed (p. 358): "We also note the absence at the present time of any definitive ruling from the United States Supreme

Court on the question whether the holding of the *Wade* case is applicable to pretrial identification of a suspect by the use of photographs without the presence of the suspect's counsel." That definitive ruling has now been made in the case of *United States* v. *Ash,* 413 U.S. 300, 93 S. Ct. 2568, 37 L. Ed. 2d 619. In the present case, Lally had been arrested but a few hours before for carrying a pistol without a permit. He was in custody but had not as yet been informed against. The photographic identification process was still part of the police investigative procedure. In the *Ash* case, Ash had already been indicted. It was during the prosecutor's preparation for trial that he used a photographic display to determine whether the witnesses he planned to call would be able to make in-court identifications. It was this post-indictment identification upon which Ash based his claim that he was denied the right to counsel at a "critical stage" of the prosecution. Nevertheless, the Supreme Court did not extend the scope of the *Wade* decision and concluded (p. 321): "We are not persuaded that the risks inherent in the use of photographic displays are so pernicious that an extraordinary system of safeguards is required. We hold, then, that the Sixth Amendment does not grant the right to counsel at photographic displays conducted by the Government for the purpose of allowing a witness to attempt an identification of the offender." In the light of our prior cases and the holding in *United States* v. *Ash,* supra, there was clearly no error in the rulings of the court relating to the witnesses' identification of the defendant.

The defendant has also assigned as error the ruling of the court that Michael Amaruso qualified

as an expert witness on the subject of fingerprints and could testify to his discovery of a fingerprint at Thomas' apartment which he concluded had been made by the defendant. Before making the ruling, the court heard testimony as to the witness' years of service in the police department, in the identification division, the training he received in the field of fingerprinting from an experienced expert, his course of study conducted by the federal bureau of investigation, his professional membership, and further studies. " ' "The determination of the qualification of an expert is largely a matter for the discretion of the trial court." *Coffin* v. *Laskau,* 89 Conn. 325, 329, 94 A. 370; *Oborski* v. *New Haven Gas Co.,* 151 Conn. 274, 280, 197 A.2d 73. The trial court's decision is not to be disturbed on appeal "unless that discretion has been abused, or the error is clear and involves a misconception of the law." 31 Am. Jur. 2d 531, Expert and Opinion Evidence, § 31.' *Siladi* v. *McNamara,* . . . [164 Conn. 510, 513, 325 A.2d 277]." *Nash* v. *Hunt,* 166 Conn. 418, 425, 352 A.2d 773. We also find no abuse of discretion in this ruling of the court.

There is no error.

In this opinion the other judges concurred.