## STATE OF CONNECTICUT *v.* RICHARD L. HAFNER

HOUSE, C. J., COTTER, LOISELLE, MacDONALD and LONGO, Js.

Argued January 7—decision released March 25, 1975

*Juri E. Taalman,* for the appellant (defendant).

*C. Robert Satti,* assistant state's attorney, with whom, on the brief, was *Edmund W. O'Brien,* state's attorney, for the appellee (state).

COTTER, J.  The defendant was found guilty by a jury of rape and simple assault and has appealed from the judgment.[1]  Error has been assigned in several of the court's rulings on his objections to the admissibility of evidence, and on his motions made during and after completion of the trial, and in the court's refusal to find certain facts set forth in the draft finding.

A brief summary of the evidence at the outset is appropriate to place the claims of error in perspective before reviewing them in detail.  From the evidence offered the jury could have found the following:  The complaining witness and her girl friend were walking home on State Street in New London about 1:00 a.m. on August 30, 1970, when

---

[1] He was found not guilty of a charge of kidnapping.

a man in an automobile stopped and asked them if they wanted a ride. The girls consented, entered the car and sat on the front seat, the complaining witness next to the driver and her girl friend near the door. The driver asked the girls if they would like to go to a party in Montville; they declined, whereupon he dropped the girl friend off at her house.

The driver refused to take the road to the complaining witness' home as she directed him. She then jumped out of the car and tried to escape, but he forced her back into the car. He thereupon drove some distance away, pulled into a dirt road and stopped near a white brick building. She jumped out of the car a second time, but again the driver forced her back inside. He proceeded some distance further to a different wooded area and made her leave the car. With a putty knife in hand, he threatened to kill her, took her clothes off and had intercourse with her. Afterwards, he forced her to put her clothes back on and drove her to a park two blocks from her home, where she was released.

The complaining witness entered her home about 3:00 a.m., screaming and hysterical, two hours after she and her girl friend had met the driver of the car, and told her mother and brother what had happened. Later that morning she went to the Waterford police department, told them her story, and described her assailant. That same day she went to a doctor who examined her and determined that she was bruised and had had intercourse.

About a week after the incident, the two girls were shown photographs by the police for identification purposes; at that time the defendant's picture was not among those examined, and neither girl identified anyone in the photographs. Approximately

seven months later, on March 24, 1971, the girl
friend identified a picture of the defendant from
an array of photographs as the man who had picked
them up; later that day, the complaining witness
identified the same photograph of the defendant. At
the trial, the complaining witness identified the
defendant in court as the man who picked her up
in the car, assaulted and raped her; her girl friend
likewise at trial identified him as the man who had
given them the ride.

## I

We first consider the defendant's assignment of
error concerning the court's denial of his motion to
suppress evidence of the pretrial photographic
identification of the defendant by the two girls, and
their subsequent in-court identification of the defend-
ant. In this motion, the defendant alleged that the
photographic identification procedure used by the
police violated his rights under the due process
clause of the fourteenth amendment to the United
States constitution,[2] in that it was "impermissibly"
suggestive and gave rise to a substantial likelihood
of irreparable misidentification; accordingly, he
requested the court to suppress evidence pertaining
to the photographic identification of the defendant
by the two girls as well as any subsequent identifi-
cation of him by these witnesses "tainted" by the

_____

[2] The defendant's other argument raised in his motion to sup-
press, i.e., that the identification procedure violated his right to
counsel guaranteed by the sixth amendment to the United States
constitution as applied to the proceedings below by the fourteenth
amendment, has been rendered moot by the decision of the United
States Supreme Court in *United States* v. *Ash,* 413 U.S. 300, 93 S. Ct.
2568, 37 L. Ed. 2d 619; *State* v. *Lally,* 167 Conn. 601, 608,      A.2d
; and has been abandoned. The "right to confrontation" claim
has not been pursued in the defendant's brief and is considered
abandoned. *State* v. *Bitting,* 162 Conn. 1, 3, 291 A.2d 240.

earlier procedure. In the absence of the jury, the court received evidence necessary to decide the motion. The defendant had the initial burden thereunder of proving to the satisfaction of the trial court that the photographic identification was somehow unconstitutional. See *State* v. *Mariano,* 152 Conn. 85, 91, 203 A.2d 305, cert. denied, 380 U.S. 943, 85 S. Ct. 1025, 13 L. Ed. 2d 962; cf. *Nardone* v. *United States,* 308 U.S. 338, 60 S. Ct. 266, 84 L. Ed. 307. We need not consider the defendant's challenge to the accuracy of the court's special finding of facts relating to the motion, since they are supported by the evidence. The court denied the motion and admitted into evidence the photographs used by the police in the identification prior to trial, the testimony by the two girls and the police concerning this identification procedure, and the in-court identification of the defendant by the two girls.

In its seminal opinion in this area of the law of criminal procedure, the United States Supreme Court held that the use of out-of-court police identification procedures may give rise to a claimed violation of due process of law if the conduct of the procedure in a given instance was "unnecessarily suggestive and conducive to irreparable mistaken identification," a claim whose adjudication, however, "depends on the totality of the circumstances surrounding it." *Stovall* v. *Denno,* 388 U.S. 293, 302, 87 S. Ct. 1967, 18 L. Ed. 2d 1199. Under this theory, appellate courts are in reality at liberty to assess the merits of a defendant's allegations of a constitutional impropriety in the methods of identification used by the police to help secure his conviction on a purely ad hoc basis, a power which has been criticized as antagonistic to the development of "permanent constitutional standards" in this area. *Id.,*

306 (Black, J., dissenting). Significantly, the exercise of this power by the Supreme Court itself in particular cases has generated a series of judicial opinions notable for their lack of harmony. See, e.g., *Neil* v. *Biggers,* 409 U.S. 188, 201, 93 S. Ct. 375, 34 L. Ed. 2d 401 (Brennan, Douglas, and Stewart, Js., concurring in part and dissenting in part; opinion by Brennan, J.); *Coleman* v. *Alabama,* 399 U.S. 1, 11, 90 S. Ct. 1999, 26 L. Ed. 2d 387 (Black, J., concurring); id., 19 (Harlan, J., concurring in part and dissenting in part); *Foster* v. *California,* 394 U.S. 440, 449, 89 S. Ct. 1127, 22 L. Ed. 2d 402 (White, Harlan, and Stewart, Js., concurring; opinion by Fortas, J.); ibid. (Black, J., dissenting); *Simmons* v. *United States,* 390 U.S. 377, 395, 399, 88 S. Ct. 967, 19 L. Ed. 2d 1247 (Black, J., and White, J., concurring in part and dissenting in part in separate opinions). Nonetheless, the Supreme Court has consistently reaffirmed, in the majority and plurality opinions in the cases heretofore cited, the "totality of the circumstances" doctrine as the theory appropriate to the review of claims such as those raised by the defendant in this assignment of error; we are bound by what that court has said the law is. See *Marbury* v. *Madison,* 5 U.S. (1 Cranch) 137, 177, 2 L. Ed. 60; see also *Martin* v. *Hunter's Lessee,* 14 U.S. (1 Wheat.) 304, 372, 4 L. Ed. 97.

## A

In *Neil* v. *Biggers,* supra (a case involving facts which arose prior to the decision in *Stovall* v. *Denno,* supra) the court, continuing its analysis of the constitutionality of pretrial identification procedures, stated that the "standard for the admissibility of testimony concerning the out-of-court identification" is whether the exhibit was so unneces-

sarily suggestive as to give rise to a very substantial likelihood of misidentification. Id., 198. "Suggestive . . . [identification procedures] are disapproved because they increase the likelihood of misidentification, and unnecessarily suggestive ones are condemned for the further reason that the increased chance of misidentification is gratuitous." Ibid. In that case, however, the court declined to adopt a per se exclusionary rule and held that testimony relating to a pretrial identification procedure deemed to have been "unnecessarily suggestive" may still be admissible if, under the "totality of the circumstances," the identification itself was "reliable." Id., 199.

We consider first whether the pretrial photographic identification procedure used by the police was either "impermissibly" or "unnecessarily" suggestive. *Neil* v. *Biggers,* supra; *Simmons* v. *United States,* supra; *Stovall* v. *Denno,* supra. It has been generally recognized that the presentation of several photographs to witnesses, including that of the suspect—the basic procedure used by the police in this case—is by itself a nonsuggestive and constitutionally acceptable practice, in the absence of any unfairness or other impropriety in the conduct of the exhibit. See, e.g., *Simmons* v. *United States,* supra, 382–84; cases collected in the annotation in 39 A.L.R.2d 1000, 1006–12 and in A.L.R.2d Supplement Service. The presence of a variety of other factors affecting the exhibit of photographs has however been accorded considerable importance as bearing on the issue of suggestiveness; the entire factual situation is taken into account in determining whether by demonstrating the presence of these factors the defendant has proved to the court's satisfaction that the procedure as a whole was so

suggestive as to influence unfairly the witness in his choice. Among such factors which are relevant to this case are whether the police showed the witness pictures of several persons among which the photograph of a single such individual is in some way emphasized; *Simmons* v. *United States, supra,* 383; *In the Matter of James H. (Anonymous),* 34 N.Y.2d 814, 816, 316 N.E.2d 334; *Atkinson* v. *State,* 511 S.W.2d 293, 294 (Tex. Crim. App.); whether the police indicated to the witness that they had other evidence that one of the persons pictured committed the crime; *Simmons* v. *United States, supra; United States* v. *Allen,* 497 F.2d 160, 163 (5th Cir.); and whether another witness was present when one of the witnesses viewed the photographs; *Simmons* v. *United States, supra; United States* v. *Hopkins,* 464 F.2d 816 (D.C. Cir.).

From the court's finding made on its ruling denying the motion to suppress, which is amply supported by the evidence, it appears that although the photograph of the defendant included in the seven which were used by the police and made exhibits at the hearing, and which the police showed to the two girls for identification, was slightly larger than the other photographs, the difference in size was almost imperceptible, and went unnoticed by both of the identifying witnesses, a fact generally viewed as cutting against a finding of suggestiveness. See, e.g., *United States* v. *Magnotti,* 454 F.2d 1140, 1142 (2d Cir.); cf. *United States* v. *Bell,* 457 F.2d 1231, 1235 (5th Cir.). In addition, the investigating police detective present during the identification informed each of the girls prior to her examination of the photographs that a suspect had been arrested for another rape and that his picture was mixed in with the others; but he did not point out any of the

photographs to either of the girls as representing the suspect to whom he referred, nor did he suggest that there was evidence connecting any of the men whose photographs appeared in the array with the crime in question. See *People* v. *Adair,* 2 Cal. App. 3d 92, 82 Cal. Rptr. 460; *Nance* v. *State,* 7 Md. App. 433, 439, 256 A.2d 377, cert. denied, 398 U.S. 954, 90 S. Ct. 1881, 26 L. Ed. 2d 296; *Drewry* v. *Commonwealth,* 213 Va. 186, 191 S.E.2d 178. Finally, the complaining witness' girl friend was present in the back seat of the police car when the complaining witness herself, in the front seat, examined the photographs; however, the girl friend did not say or do anything before, during, or after the complaining witness' identification to influence her selection. See *United States* v. *Hopkins,* supra; *Tate* v. *United States,* 268 A.2d 855, 856 (D.C. App.). We cannot say that under the circumstances of this case the court should have concluded that any of these factors rendered the photographic identification procedure impermissibly or unnecessarily suggestive.

Indeed, a number of precautions designed to reduce the possibility of suggestiveness were taken by the police. For example, the investigating detective present during the identification did nothing to hint or suggest to either of the girls that she should identify the picture of the defendant. In addition, each of the photographs in the display was of an individual who exhibited facial qualities, hair style, and coloring similar to that of the defendant. Furthermore, all of the pictures were black-and-white, and of the same texture. Precautionary measures such as these have been specifically designated by courts as tending to minimize suggestiveness in identification procedures. *Simmons* v. *United*

*States,* supra, 383; *Fresquez* v. *People,* 178 Colo. 220, 228–29, 497 P.2d 1246; *Atkinson* v. *State,* 511 S.W.2d 293, 294 (Tex. Crim. App.); *State* v. *Butler,* 11 Wash. App. 605, 524 P.2d 488.

The defendant has sought to emphasize the fact that his picture selected for inclusion in the photographic exhibits by the police was not a recent photograph but a "mug shot" stemming from an arrest in 1966. It is argued that this action was relevant on the issue of suggestiveness because of the claimed fact that the complaining witness' girl friend had earlier told police that she had recognized the driver of the car as a student with whom she had once been in high school. However, there was no showing that the defendant had in fact been in school with the girl friend in 1966; on the contrary, the finding established that about two years had elapsed between the time the defendant and the girl friend were in the same school together and the time (1966) the photograph of the defendant was taken; this finding is supported by the evidence. The use of that later photograph of the defendant, then, can hardly be said to have been impermissibly or unnecessarily suggestive within the context of the facts of this case.

In view of all the circumstances involving the photographic identification procedures used by the police in this case, the court could have properly concluded, on the basis of the subordinate facts in its finding, that the defendant had not met his burden of showing constitutional defects in the identification procedure. Thus there is no need for this court to determine whether the actual identification of the defendant's photograph by the two girls was

"reliable." *United States* v. *Evans,* 484 F.2d 1178, 1184–85 (2d Cir.); see also *Neil* v. *Biggers,* 409 U.S. 188, 199, 93 S. Ct. 375, 34 L. Ed. 2d 401. However, from the court's finding to the effect that because of the nature of her experience the complaining witness had ample opportunity to observe the assailant's face in detail; the extensive period of time (2 hours) during which she was with the man; the fact that her prior description of the assailant substantially coincided with the picture of the defendant in the photographic array; the close proximity of the two girls to the driver of the car on the night of the incident; the fact that the girl friend had recognized the defendant at the time he offered them the ride as a person she had known in high school; and the fact that neither girl identified anyone else during either of the two photographic identification procedures, the court could reasonably have concluded that their identification of the photograph was "reliable" in the constitutional sense. See *Neil* v. *Biggers,* supra; *United States* v. *Roby,* 499 F.2d 151, 154 (10th Cir.); *United States* v. *Allen,* 497 F.2d 160, 163 (5th Cir.); *Constantine* v. *People,* 178 Colo. 16, 24, 495 P.2d 208; *State* v. *Watts,* 296 Minn. 354, 359, 208 N.W.2d 748; *State* v. *Bono,* 128 N.J. Super. 254, 319 A.2d 762; *Atkinson* v. *State,* 511 S.W.2d 293, 295 (Tex. Crim. App.). Accordingly, the court did not err in denying the motion to suppress evidence of the pretrial photographic identification.

## B

The defendant has also challenged the constitutionality of the in-court identification of the defendant by the two girls. Such identifications are inadmissible under the theory of due process of law

advanced by the defendant only if "tainted" by an unlawful pretrial identification, that is, only if the pretrial photographic identification procedure "was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons* v. *United States,* supra, 384; *State* v. *Smith,* 165 Conn. 680, 684, 345 A.2d 41. Thus our conclusion that the pretrial photographic identification in this case comported with the requirements of the due process clause is dispositive of the defendant's arguments on this issue; *United States* v. *Evans,* supra; *United States* v. *Williams,* 421 F.2d 1166, 1167 n.2 (D.C. Cir.); *Tate* v. *United States,* 268 A.2d 855, 858 (D.C. App.); although we firmly approve of the court's decision to rule on the existence of an "independent source" of the in-court identification. *Clemons* v. *United States,* 408 F.2d 1230, 1237 (D.C. Cir.), cert. denied, 394 U.S. 964, 89 S. Ct. 1318, 22 L. Ed. 2d 567. We hold that the court did not err in denying the motion to suppress the in-court identification.

## II

The defendant contends that the state's evidence was insufficient to support the jury's verdict. Such a claim is tested by the evidence printed in the appendices to the briefs. *State* v. *Lally,* 167 Conn. 601, 603, 356 A.2d 897. In light of the evidence summarized earlier, and considering especially the in-court identification evidence which we have held was properly admitted, the jury could fairly have concluded that the state had proved its case against the defendant beyond a reasonable doubt. *State* v. *Smith,* 167 Conn. 328, 331, 355 A.2d 257; cf. *State* v. *Smith,* 165 Conn. 680, 686, 345 A.2d 41. The court did not err, then, in denying the defendant's

motions for a directed verdict, to set aside the verdict, and for judgment notwithstanding the verdict on the ground that it was against the evidence. See *State* v. *Lally,* supra, 604–605.

## III

The defendant assigns error in the court's rulings on two objections to questions addressed to the defendant on cross-examination by the state's attorney, to which the defendant excepted. The first ruling involved a question whose purpose was to elicit from the defendant the extent of his knowledge of the area where the rape had occurred. On cross-examination the defendant, without objection by his counsel, admitted his general knowledge of the place where the complaining witness claimed she had been raped. Then he was asked: "About how many small dirt roads are there in that area?" The defendant replied: "I'd say over four. I don't know the exact amount. I know there is quite a few off that road." It was to the next question that the defendant objected: "And of these four, how many of them had you been to or how many of them are you familiar with?"[3] The court overruled the objection to this question, which the defendant had claimed was "vague," and allowed him to answer; he stated he was familiar with all four of the roads. We cannot say the court abused its discretion in allowing the defendant to explain the basis of his familiarity with the area in which the crime he was alleged to have committed took place, since he had already testified without objection to his general knowledge

[3] The defendant assigned error in what he claimed was the court's refusal to include this question in its finding. The question was, however, included by the court in the supplement to the corrected finding.

of that area. The admission of his answer was "at least fairly within the discretion of the trial court as to the scope of cross-examination." *State* v. *Bradley,* 134 Conn. 102, 116, 55 A.2d 114, cert. denied, 333 U.S. 827, 68 S. Ct. 453, 92 L. Ed. 1112.

The defendant later objected to a question the purpose of which was to authenticate a photograph by determining if he had been on a certain dirt road depicted therein—about seven months after the rape in question took place. The objection was overruled and the defendant allowed to answer that he could not recall. The admission of a question concerning matters of which the witness replies that he has no knowledge or cannot remember has not by itself constituted reversible error in this state. See *State* v. *Joseph,* 96 Conn. 637, 641, 115 A. 85. We cannot say that in overruling the defendant's objections to this question the court committed error so prejudicial as to warrant reversal.

## IV

Finally, the defendant has assigned error in the denial of two motions for mistrial as an abuse of the court's discretion. At trial, the defendant grounded these motions upon what he claimed to be the prejudicial effect of a series of questions[4] by the state's attorney asked of the defendant on cross-examination. Nine questions were posed. The purpose of the first three was to determine whether the defendant had engaged in improper sexual conduct

---

[4] The defendant also assigned error in the court's refusal to include several of these questions in the finding. However, the court did include them in the corrected finding and in the supplement thereto, and we consider them in reviewing the assignment of error relating to the denial of the defendant's motion for mistrial.

in the same vicinity where the rape had occurred.[5] The court sustained the defendant's objections to the first and last of these questions and the state's attorney withdrew the second question before the court had an opportunity to rule on the objection thereto. After the third question was asked, the defendant moved for a mistrial, claiming in the absence of the jury that the state's attorney "was making reference to a prior legal proceeding involving the defendant having relations with another lady in that area which had occurred in March, 1971";[6] he also claimed that the state had committed incurable prejudicial error "by putting defendant's character in question in attempting to introduce evidence of a subsequent crime for which the defendant had been tried and acquitted." The state's attorney argued that the purpose of the questions was to impeach the defendant's credibility and to establish his familiarity with the area, claiming that the defendant had been "evasive" in answering questions about his knowledge of the area as a "lovers' lane"; his contention was that "if the defendant were familiar with the premises at the time of the offense as being secluded . . . it would be more likely that he would take a girl to such an area to rape her." The court denied the motion for mistrial, admonishing the state's attorney to limit his questions to the defendant's "familiarity with the area" and "not to go beyond that."

The rule in this state is that a motion for mistrial "should be granted as a result of some occur-

[5] "You yourself have taken a girl up there and had relations with her on one of those roads, haven't you?" "Isn't it a fact that you yourself have been up one of those dirt roads and had relations with a woman up there?" "Have you ever been on one of these roads, one of these four roads making love with a woman?"

[6] The court told counsel during argument that the jury knew nothing about the earlier case.

rence upon the trial of such a character that it is apparent to the court that because of it the accused cannot have a fair trial and the whole proceedings are vitiated." *State* v. *Leopold,* 110 Conn. 55, 60–61, 147 A. 118. Furthermore, "[t]he trial court has a wide discretion in passing on motions for mistrial." *Ferino* v. *Palmer,* 133 Conn. 463, 466, 52 A.2d 433. Nothing in the three questions asked by the state's attorney which constituted the basis of the defendant's first motion for mistrial suggested that another rape had occurred in the same vicinity as the rape for which the defendant was on trial, or that he was in any way connected with another crime of rape. The most that these questions intimated was that the defendant had engaged in improper sexual conduct with a woman in the area. Such evidence of the defendant's immoral conduct in that area was arguably admissible as probative of his veracity with respect to his prior testimony about his familiarity with the area as a "lovers' lane," as the state's attorney argued. See *State* v. *Guthridge,* 164 Conn. 145, 157, 318 A.2d 87; *Vogel* v. *Sylvester,* 148 Conn. 666, 675, 174 A.2d 122. In sustaining the objections to two of these questions, however, the trial court may well have concluded that the prejudicial effect of the evidence would outweigh its probative value. See *State* v. *Moynahan,* 164 Conn. 560, 597, 325 A.2d 199. But the court might still have concluded that the mere asking of these questions did not deprive the defendant of a fair trial and "vitiate" the whole proceedings, since none of the questions complained of was answered, since the questions themselves did not implicitly associate the defendant with another crime of rape, and since there was a colorable legal basis for the state's attorney's arguments in support of the

admissibility of these questions. Its denial of this first motion for mistrial, then, was not error, but was "well within the wide range of discretion vested in the trial judge." *State* v. *Bausman,* 162 Conn. 308, 312, 294 A.2d 312.

In his second motion for mistrial, the defendant complained of another series of questions asked during cross-examination by the state's attorney, who, complying with the court's admonition, continued in his efforts to establish the defendant's familiarity with the vicinity in the wooded area where the complaining witness had been raped and his knowledge of its use as a "lovers' lane." Earlier, the state's attorney had asked the defendant whether he was familiar with the place and building shown in exhibit "J," which had been identified by the complaining witness as the white building where she was taken before the rape; the defendant admitted that he was. The state's attorney had also shown him exhibit "M," a photograph of the dirt road on which the complaining witness had testified the rape had occurred, but he had testified that "it just shows me a dirt road, I don't know where it is." He had responded similarly when the state's attorney showed him exhibit "N," another photograph of the same road. He also testified that he knew of the existence of several dirt roads off Unger Road, that these roads were "a desolate area," and that he knew "the area was a desolate area on August 30, 1970." The defendant further testified that he had heard the testimony to the effect that exhibit "M" showed a dirt road off Unger Road.

The state's attorney then produced a third photograph, unmarked, and asked the defendant if he could identify it; his answer was that it was a dirt

road with a junked car on it, and he knew many dirt roads with junked cars on them. The most he would say about it was that "it looks familiar." Thereupon, the state's attorney asked him: "On March 22, 1971, were you in that particular location where that photograph is shown?" The court overruled the defendant's objection and allowed him to answer: "I can't recall if that's the exact area or not, no, sir." The defendant duly excepted to the court's ruling. The state's attorney then launched a series of questions for the stated purpose of determining "if the defendant could identify the unmarked photo."

In response to this line of questioning, the defendant testified without objection that "the area he was on on March 22 was off a dirt road" and that the dirt road was located off Unger Road. He was then asked if his "purpose" in being there was "to be in an isolated or desolate place?" The defendant's objection to this question was sustained. Thereupon, the state's attorney asked him: "At the time you were there on March 22nd, were you there with someone else?" The court again sustained the defendant's objection made on the ground that it was immaterial with whom the defendant was there. Subsequently, the state's attorney asked him: "At the time you were there on March 22nd, you knew it was an isolated place?" On objection by the defendant, arguing immateriality, the question was withdrawn. Finally, the defendant was asked: "When you were there on March 22nd, you had been familiar with the area prior to March 22nd . . . hadn't you, Mr. Hafner?" The court sustained the ensuing objection, and the state's attorney abandoned this approach. Instead, he asked the defendant whether, since August of 1970, he had "devel-

oped the habit" of picking up girls who hitchhiked. The defendant's objection to the question as immaterial was sustained. The court likewise sustained the objection to a later question regarding the defendant's habits of picking up girls in August of 1970. Thereupon, the defendant "renewed" his motion for a mistrial.

At the hearing on the motion which was conducted in the absence of the jury, the defendant again argued that through the foregoing line of questioning the state's attorney was "deliberately" trying to introduce facts relating to the rape of another woman on March 22, 1971, for which he had been charged, tried, and acquitted. The state's attorney's position was that at the previous trial the defendant had testified about facts and circumstances relating directly to Unger Road, "its condition and nature"; thus when photographs of the same area were shown to him at the present trial and he stated he could not recognize the area in the picture, it was proper to impeach his credibility by showing "prior inconsistent statements." Moreover, the state's attorney indicated that he had not consciously tried to prejudice the defendant with inadmissible questions. The court ruled that "the prosecutor had asked questions which merely called for a yes or no answer and to most of these questions the court had sustained the defendant's objection" and denied the motion for mistrial, to which the defendant excepted.

Misconduct involving the cross-examination of witnesses in a criminal trial entitling the defendant to a new trial is said to consist of a deliberate effort or efforts on the part of the prosecutor to influence the jury adversely through the attempted introduction of various sorts of inadmissible evidence. See

Alschuler, "Courtroom Misconduct by Prosecutors and Trial Judges," 50 Tex. L. Rev. 629, 633; American Bar Association, Standards Relating to the Prosecution Function and the Defense Function § 5.6 (b). In this case, the answers which the state's attorney sought from the defendant concerning his ability to identify the dirt road shown in the unmarked photograph might have resulted in the collateral disclosure of unduly prejudicial information having probative merit or exceeding in some other way the proper bounds of an authentication inquiry or impeachment by way of prior inconsistent statements; the rulings of the court sustaining objections to these questions were, then, correct. See *Sears* v. *Curtis*, 147 Conn. 311, 315–16, 160 A.2d 742; *Thibodeau* v. *Connecticut Co.*, 139 Conn. 9, 14, 89 A.2d 223; *Smith* v. *Hausdorf*, 92 Conn. 579, 582, 103 A. 939. Similarly, the questions concerning the defendant's "habit of picking up girls" may have been relevant as showing his method of accosting women; *Coney* v. *State*, 193 So. 2d 57, 58 (Fla. App.); *State* v. *Whalon*, 1 Wash. App. 785, 464 P.2d 730; annot., 77 A.L.R.2d 841 and Later Case Service, p. 373; yet the court acted well within its discretion in excluding the questions likewise in the interest of avoiding prejudice to the defendant. See *Vogel* v. *Sylvester*, 148 Conn. 666, 676, 174 A.2d 122; *State* v. *Ferguson*, 71 Conn. 227, 232, 41 A. 769. There were no facts to support the defendant's claim, however, that the state's attorney had "deliberately" attempted to introduce inadmissible evidence through improper questions. On the contrary, the court had earlier informed the state's attorney that it would allow questions on the defendant's "familiarity" with the vicinity where the rape occurred; the court, in addition, had permitted the state's attorney to

open this line of questioning by asking the defendant whether he was on the road depicted in the unmarked photograph on March 22, 1971; the defendant's objections to the questions were founded only on claims of immateriality; and, the state's attorney was able to advance colorable legal arguments in support of his claims for the admissibility of the questions. Thus a conclusion that he had proceeded in bad faith or otherwise attempted to harass the defendant through this line of questioning would be inappropriate. See, e.g., *People* v. *Walsh,* 32 Cal. App. 3d 463, 468, 108 Cal. Rptr. 115; see also *People* v. *Lewis,* 180 Colo. 423, 427, 506 P.2d 125; *Padillow* v. *State,* 501 P.2d 837, 840 (Okla. Crim. App.).

We accept the practice of the majority of jurisdictions in according the absence of bad faith by the prosecutor considerable weight, depending upon the circumstances of the case, in our review of whether the court was properly within its discretion in denying the motion for mistrial. See, e.g., *People* v. *Helfend,* 1 Cal. App. 3d 873, 884, 82 Cal. Rptr. 295, cert. denied, 398 U.S. 967, 90 S. Ct. 2182, 26 L. Ed. 2d 551; *Miller* v. *State,* 50 Del. 579, 583, 137 A.2d 388; *State* v. *Stillman,* 310 S.W.2d 886, 888–89 (Mo.); *State* v. *Sullivan,* 6 Utah 2d 110, 115, 307 P.2d 212; *State* v. *Smith,* 4 Ore. App. 261, 478 P.2d 417. This is not to say, however, that a showing of good faith on the part of the prosecuting attorney is determinative of the question; indeed, the principle is well established that serious prosecutorial misconduct, regardless of the prosecutor's intentions, may so pollute a criminal prosecution as to require a new trial, even without regard to prejudice to the defendant. *United States* v. *McCord,* 509 F.2d 334, 349 (D.C. Cir.), cert. denied, 421 U.S. 930,

95 S. Ct. 1656, 44 L. Ed. 2d 87; *United States* v. *Nettl,* 121 F.2d 927, 930 (3d Cir.); *State* v. *Currie,* 267 Minn. 294, 302, 126 N.W.2d 389. Factors crucial to appellate adjudication of such questions are not only the need to discipline prosecutors in the event of reprehensible misconduct, but to assure ultimate fairness to the accused. See Alschuler, supra, 646.

In this connection, the questions complained of went wholly unanswered by the defendant. The court may well have concluded, then, that sustaining the defendant's objections would purge the proceedings of any improprieties in the cross-examination, a reasonable judicial response to such circumstances. See *United States* v. *Baum,* 435 F.2d 1197, 1202 (7th Cir.), cert. denied, 402 U.S. 907, 91 S. Ct. 1373, 28 L. Ed. 2d 647; *Dailey* v. *State,* 250 Ark. 965, 967, 468 S.W.2d 238; *State* v. *Rhoden,* 243 S.W.2d 75, 77–78 (Mo. Super.); *Sparkman* v. *State,* 469 S.W.2d 692, 694 (Tenn. Crim. App.); see also Margolis, "Prosecutorial Cross-Examination: Limitations upon the Sword of Justice," 65 J. Crim. L. & C. 2, 44, 45. Had any of the questions been answered, however, cautionary instructions to the jury would have been appropriate. See *State* v. *Savage,* 161 Conn. 445, 448–49, 290 A.2d 221; *State* v. *Miller,* 154 Conn. 622, 631, 228 A.2d 136; *Ferino* v. *Palmer,* 133 Conn. 463, 467, 52 A.2d 433.

There are situations, of course, where no action undertaken by the court is sufficient to cure a line of questioning on cross-examination that is inherently prejudicial. These are the "extreme cases where it appears that the question . . . is clearly calculated to inflame the minds of the jury and is of such character as to suggest the impossibility of

withdrawing the impression produced on their minds." *White* v. *State,* 444 S.W.2d 921, 922 (Tex. Crim. App.) ; see also *Lewis* v. *Oliver,* 129 Colo. 479, 482, 271 P.2d 1055; *State* v. *Davis,* 448 S.W.2d 892, 894 (Mo.) ; cf. American Bar Association, Standards Relating to the Prosecution Function and the Defense Function § 5.8 (c). In such instances there is a reasonable possibility that the improprieties in the cross-examination either contributed to the jury's verdict of guilty or, negatively, foreclosed the jury from ever considering the possibility of acquittal. See *Lewis* v. *Oliver,* supra, 482; Alschuler, supra, 662. In this case, however, the defendant was not subjected to the same kind of treatment as the witnesses in *Berger* v. *United States,* 295 U.S. 78, 55 S. Ct. 629, 79 L. Ed. 1314, the classic example of incurable prosecutorial misconduct. There, the prosecutor misstated facts, assumed facts unsupportable by evidence, pretended to misunderstand witnesses' answers and continued to cross-examine on that basis, suggested that statements had been made to him outside court when in fact none had, and bullied and argued with the witnesses. Id., 85–88; see also Margolis, supra, 42. Nor is this a case like *State* v. *Wright,* 203 N.W.2d 247 (Iowa), in which the Iowa Supreme Court reversed the conviction of a defendant of a sexual offense on account of the failure of the trial court to grant his motion for a mistrial. There, the prosecuting attorney doggedly pursued a line of questioning, in the face of a series of objections and unfavorable rulings, deliberately designed to insinuate specifically that the defendant was also guilty of the same crime on an occasion other than that for which he was presently on trial. Id., 251. Unlike that case, there was no suggestion here in any of

the state's attorney's questions directly associating the defendant with another crime of rape. We cannot conclude, then, as could the Iowa court, that the cross-examination complained of was "inflammatory and corrosive of . . . [the] defendant's presumption of innocence." Ibid.

Other assignments of error have been specifically abandoned or have not been briefed and are considered abandoned; nor need we discuss any additional facts not heretofore mentioned which the defendant has requested us to add to the finding, since they would not affect the outcome of the case.

The court did not abuse its discretion in denying the defendant's motions for mistrial.

There is no error.

In this opinion the other judges concurred.