Charles Strodes appeals from his conviction after a jury trial in the Clark County Common Pleas Court of aggravated robbery with a specification of a prior aggravated felony conviction.
Evidence to convict Strodes was essentially the eyewitness testimony of the victim, Joan McCormick. Ms. McCormick testified she was working at the Ale House drive-thru in Springfield on Saturday, January 9, 1988. She testified that at approximately 2:00 p.m. a young gentleman entered the interior of the drive-thru and asked her for change for a ten dollar bill. Ms. McCormick stated she turned around, opened the cash register and gave the man the change. After giving the man the change, the man asked Ms. McCormick if the business was taking any job applications. She stated he should come back the next day and check with the manager. (Tr. 20).
Ms. McCormick described the man requesting the change as clean-cut, and he didn't have long shaggy hair. She identified the defendant in the courtroom as that individual. (Tr. 20). Ms. McCormick stated the defendant was in the store for probably three minutes, three to five minutes at the most. (Tr. 21). She testified she was facing him at all times and probably looked at him closer than a normal customer because he asked about a job application. (Tr. 22).
Ms. McCormick testified the defendant returned in 10 or 15 minutes with a knife, grabbed her around the neck, and asked to get on the floor and told her "This is a stickup." (Tr. 22). She said she got on the floor while the defendant opened the cash register and began stuffing money in his pockets. (Tr. 22).
Ms. McCormick testified she knew it was the same individual who had been in the store ten minutes earlier. She testified, "the minute he walked in that door, I recognized the face." (Tr. 23). She said the defendant was in the store 3-5 minutes the second time. Ms. McCormick said the defendant was wearing a maroon colored stocking cap and a dark tan jacket. She said she immediately called the police after the defendant fled the store.
Ms. McCormick testified she examined two sets of photographs presented her by Detective Ron Menda. State's Exhibits B and C. State's Exhibit B was six color mugshots of five black males. State's Exhibit C was six black and white mugshots of black males. Only the defendant appeared in both sets of mugshots. Ms. McCormick testified she examined the color photographs first and the black and white photos later. The only photograph she signed was State's C-1 a black and white photo of the defendant. She testified she had no doubt the defendant committed the robbery. (Tr. 32).
On cross-examination she admitted she couldn't see the defendant taking the money out of the register as she was face down on the floor. (Tr. 35). She testified she had no trouble identifying the robber from the first group of photographs. She said it came down to two photos and she picked the defendant's photo. (Tr. 39). State's Exhibits B-1 and B-5 contain red check marks apparently to reflect the two persons who the witness thought most resembled the robber. Ms. McCormick said she would have signed the defendant's color photo if Detective Menda had told her to do so.
On cross-examination, Ms. McCormick stated she narrowed her choices to three after first seeing the color photographs. She admitted she settled on the defendant as the robber after she saw him in both photo spreads. (Tr. 42). She said she wasn't initially certain that it was the defendant after the first photo spread because the pictures were old. (Tr. 42). Ms. McCormick further testified she believed the robber to be 5'6" or 5'7" tall. She said at the time of the robbery she saw the robber for 30 seconds. (Tr. 44).
Detective Menda testified he showed the color photo array to Ms. McCormick at the police station two days after the robbery. He said he told her his suspect was in the photo array. Menda said Ms. McCormick identified defendant from the color photo array. State's Exhibit B-1. Menda said he then showed the victim more recent mugshots which were in black and white. State's Exhibit C. Menda said she again identified the defendant's photo as the robber. Menda admitted the defendant was the only person depicted in both photo arrays. (It is interesting to note that a Michael Samuels photo appears twice in the black and white photo array meaning only five individuals were present in the array).
Patrolman Nathaniel Smoot testified he was dispatched to the area of the Ale House on the report of the armed robbery. He said he and other officers patrolled the area in search of suspects. He said he then went to the Ale House and attempted to lift latent fingerprints but was not successful in recovering any.
Smoot said at 2:30 p.m., the afternoon of the robbery, he spotted the defendant's vehicle parked three blocks from the robbery scene. The car had two flat tires. (Tr. 51). Smoot said he arrested the defendant in the same vehicle on Tuesday morning, January 12, 1988. The tires had been repaired.
The defendant presented the testimony of several witnesses and himself that he was at a house on the other side of Springfield at the time of the offense. The defendant testified he purchased spark plugs to fix his car at the time of the crime. He also said he was wearing two silver balled earrings in his left ear at the time of the robbery.
In his first assignment, the defendant asserts he was denied due process as a result of an impermissibly suggestive photo array. In particular, Strodes claims the photo array was impermissibly suggestive because Menda told the victim the suspect's picture was in the array of mug shots and the defendant's picture was the only one in both arrays.
A witness' out of court identification of an accused is not admissible at trial if the identification procedure used was so unnecessarily suggestive and conducive to a substantial likelihood of misidentification that the accused was denied due process of law. Neil v. Biggers (1972), 409 U.S. 188, 198, 93 S.Ct. 375,381.
Whether a substantial likelihood of misidentification has occurred during the identification process, courts must consider the following factors:
 (1) opportunity of the witness to view the criminal at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of the witness' prior description of the criminal, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation.
Against these factors is to be weighed the corrupting effect of the suggestive identification itself.
In Manson v. Braithwaite (1977), 432 U.S. 98, 97 S.Ct. 2243, the United States Supreme Court identified a two step procedure to determine whether the identification procedures employed by the police violate defendant's right to due process of law. First, the court must consider whether the procedures were unnecessarily suggestive. Second, there must be a determination of whether the identification lacks independent reliability despite the suggestive nature of the procedure used.
A suggestion made to an identifying witness that the police have reason to believe that one of the persons in the array committed the crime is a relevant factor in the suggestivity analysis. State v. Hafner, 168 Conn. 230, 238, 362 A.2d 925, 930, cert. denied 423 U.S. 851, 96 S.Ct. 95 (1975). This suggestion gives the witness added incentive and impetus to identify one of the pictures.
When the suspects are the only individuals to appear in a subsequent photo array, the effect is to trigger a recognition response in the witness. See, Taylor, Eyewitness Identification at 116 (1982).
Both of the above suggestive procedures coupled with the likelihood of misidentification, caused one court to exclude both the witness' pretrial identification and her in court identification. State v. Nicoletti (R.I. 1984), 471 A.2d 613.
We find that the identification procedure used by Detective Menda was unnecessarily suggestive. We will thus apply theBiggers factors to determine whether Ms. McCormick's identification of the defendant possesses independent reliability.
1. The opportunity to view and (2) the degree of attention of the witness.
Ms. McCormick testified she observed the defendant for some three to five minutes when he first entered the store seeking change for the ten dollars. She also testified she probably looked at the defendant closer than a normal customer because he asked about a job. (Tr. 22). She admitted she had only about thirty seconds to observe the defendant when he returned wielding a knife ten minutes later.
(3) The accuracy of the description. The witness described the robber as clean cut and without shaggy hair. She said he was wearing a maroon toboggan cap pulled over his hair and ears. (Tr. 37). She stated he was a black male, five feet six or seven. (Tr. 43). The defendant testified he wore a red bandanna around his hair because he wears his hair in a Mohawk style. He said when he wears his bandanna it covers his ears. (Tr. 116). He said he was wearing two silver ball earrings in his left ear on the date in question. The mugshot taken of the defendant on June 6, 1987 depicts the Mohawk style haircut of the defendant. He is listed as 5'9" inches tall. Although the defendant argues the witness should have seen his earrings, her failure to do so is consistent with her testimony that the hat worn by the defendant covered his ears. Ms. McCormick's identification fairly closely describes the defendant.
4. The witness' level of certainty. Ms. McCormick testified she spread the color photograph out on a table and eliminated photos by process of elimination. She said she weeded it out to be the defendant's picture. She said she had no trouble identifying the defendant's photograph. (Tr. 39). She said she had no doubt when she viewed defendant's more recent picture in the second photo array. (Tr. 42).
5. The time between the crime and the confrontation. The photographic identification by the victim occurred within two days of the crime. In Manson, supra, the witness was shown a single photograph of the suspect within two days of the crime.
Utilizing the Biggers factors, we cannot say that under all the circumstances of this case there is a very substantial likelihood of irreparable misidentification. Short of that we agree with the Supreme Court's observation in Manson, that such evidence is for the jury to weigh. The court observed that juries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature. Manson, supra, at 97 S.Ct. 2254.
Appellant also contends he was prejudiced by the introduction into evidence of his two mug shots taken in 1985 and 1987. State's Exhibit B-1 and C-1.
In State v. Breedlove (1971), 26 Ohio St.2d 178, the Ohio Supreme Court held that on direct examination evidence of the identification of the defendant from a selection of photographs, using photographs from police files with police identification numerals thereon which provide the finder of facts with the reasonable inference that the defendant has had prior criminal involvement, may not be used for the purpose of proving defendant's identity. In Breedlove, the court held the introduction of the mug shots was prejudicial error because there was a timely objection to their introduction. No such objection was lodged by counsel in this case. We cannot find there is plain error present in this record. We cannot say the outcome of this trial would clearly have been different had the photographs not been admitted in evidence. See, State v. Long (1978), 53 Ohio St.2d 91. The defendant testified and his felony record was admissible to impeach him. His prior robbery conviction was admitted in evidence to prove the specification in the indictment. (See Joint Exhibit 1). Accordingly, the first assignment of error is overruled.
In his second assignment, Strodes argues that he was denied effective assistance of counsel when his trial counsel failed to adequately investigate the case, interview witnesses and acquire exculpatory evidence.
Appellant contends he asked his trial counsel to get the receipt from Rocky's Auto Parts which had the date and time of purchase out of his car which was impounded by the police. He contends the receipt would have demonstrated that he purchased the spark plugs at 2:00 p.m. on the south side of Springfield at the same time the alleged robbery occurred. He also contends his counsel was ineffective in not obtaining the earrings which were taken from him on the date of his arrest. Also he says his trial counsel should have subpoenaed his common law wife who was with him when his ears were pierced on January 5, 1997. He also claims his trial counsel should have subpoenaed a Kim Clay who he says purchased appellant's stereo for $15.00 the day after the robbery to show that it was unlikely appellant robbed the carry out the previous day.
The appellate record fails to portray the ineffectiveness asserted by the appellant. We do not know whether the receipt would corroborate the defendant's testimony. Whether the defendant was wearing the small earrings on the date of his arrest does not prove he was wearing them on the date of the robbery. In any event, the witness says the defendant's ears were covered.
Appellant contends his trial counsel was ineffective for failing to file a motion to suppress Ms. McCormick's identification of him. For the reasons cited in our resolution of the first assignment, this contention is also without merit. The appellant's second assignment of error is also overruled.
The judgment of the trial court will be Affirmed.
YOUNG, P.J. and WOLFF, J., concur.
Copies mailed to:
Darnell Carter
Darrell L. Heckman
Charles B. Strodes
Hon. Gerald F. Lorig